**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

|  |  |
|---|---|
| ORGANIC SEDIMENT REMOVAL SYSTEMS, LIMITED LIABILITY COMPANY, a Wisconsin Limited liability company, | ) ) ) |
| Plaintiff, | **08CV976** |
| v. | **JUDGE ASPEN** **MAGISTRATE JUDGE NOLAN** |
| BRIAN PIRL and MIDWEST CAPS & ACCESSORIES, INC. d/b/a U S AQUA VAC INC., an Illinois Corporation, | ) ) ) **JURY DEMANDED** ) |
| Defendants. | ) ) |

## COMPLAINT

NOW COMES, the Plaintiff, ORGANIC SEDIMENT REMOVAL SYSTEMS,

LIMITED LIABILITY COMPANY, a Wisconsin limited liability company ("OSR" or

"Plaintiff") by and through its undersigned counsel, and for its Complaint against Defendants

BRIAN PIRL ("Pirl") and MIDWEST CAPS & ACCESSORIES, INC. d/b/a US AQUA VAC

INC., an Illinois corporation ("US") (Pirl and US may be collectively referred to as

"Defendants"), alleges and states as follows:

## THE PARTIES, VENUE AND JURISDICTION

1.     OSR is a Wisconsin limited liability company with its principal place of business

in Necedeh, Wisconsin.  Richard Kohutko is the only member of OSR, and Richard Kohutko is a

citizen of the State of Wisconsin.

2.     Pirl is an individual who resides in Monee, Illinois and is a citizen of the State of

Illinois.

3.      US is an Illinois corporation incorporated in the State of Illinois with its principal place of business in Monee, Illinois.

4.      The events giving rise to the claims set forth in this Complaint occurred in the Northern District of Illinois and Defendants have conducted business in the Northern District of Illinois.  The Defendants are citizens of the State of Illinois.

5.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a) as Plaintiff and Defendants are citizens of different states and the amount in controversy, exclusive of interest and costs, exceeds $75,000.00.

## FACTS

6.      OSR, through use of its specialized methods, technologies and processes is in the business of cleaning the bottoms of ponds and other waterways, such as those found on golf courses.  The home page for OSR's Internet website can be found at www.pondclean.com. Traditionally, such services have been performed through more cumbersome and messier methods such as draining the pond or waterway or using a barge to remove the sediment and "muck" that can be found on the bottom of ponds and other waterways.  Therefore, OSR, through its methods, technologies and processes, has been able to drastically improve such services to customers.

7.      OSR, through its corporate predecessor, over the course of approximately sixteen to seventeen years, *i.e.* from in or around 1989 through in or around 2006, developed an apparatus (the "OSR Apparatus") which will not be described in great detail in this Complaint pending OSR's Motion to File a Complaint under Seal and/or to obtain an appropriate protective order.  In general, however, the OSR Apparatus has the following features and qualities:

      a.      The OSR Apparatus utilizes hoses and pumps of different diameters to enable its suctioning ability.

2

   b.  The OSR Apparatus allows two persons to perform sediment removal simultaneously.

   c.  The OSR Apparatus filters out materials such as large rocks that customers do not desire or need to be removed from the bottom of a waterway.

The OSR Apparatus is operated by OSR's divers.

  8.  Pirl commenced his employment with OSR as a diver on or about May 8, 2006. Pirl terminated his employment with OSR in or around October, 2006.

  9.  While employed at OSR, Pirl worked intimately with the OSR Apparatus; OSR's methodologies, procedures and practices; and performed services for OSR's clients in Illinois and Wisconsin.

  10.  Pirl had no meaningful prior job experience in the areas of OSR's business prior to his employment by OSR.

  11.  While employed at OSR, Pirl executed a "Confidentiality and Non-Disclosure Agreement" (the "Confidentiality Agreement") dated May 8, 2006, a true and correct copy of which is attached hereto and incorporated herein as Exhibit "A."

  12.  Pursuant to the Confidentiality Agreement, both during his employment and thereafter, Pirl agreed not to reproduce, divulge, publish, communicate, use or utilize without OSR's express written consent information defined therein as "Business Trade Secrets" or "Confidential Information." Pursuant to the Confidentiality Agreement, Pirl also agreed to return all Confidential Information (including Business Trade Secrets) within fifteen days of OSR's demand for the return thereof.

13.    Pirl incorporated US on May 24, 2005.  As can be seen from US' Internet website, www.usaquavac.com, US is now in the same business as OSR, but was not in OSR's same business prior to OSR's employment of Pirl.

14.    Trade secrets critical to OSR's business include, but are not limited to, the following ("OSR Trade Secrets"):

      a.    The assembly of the OSR Apparatus;

      b.    The development of the OSR Apparatus;

      c.    The function of the various components of the OSR Apparatus;

      d.    Techniques in using the OSR Apparatus;

      e.    Pricing information;

      f.    Potential customer contacts; and,

      g.    Other information that can be classified as "trade secrets"
         under Illinois or Wisconsin law.

15.    OSR protects the secrecy of its OSR Trade Secrets through the following measures:

      a.    OSR does not publicly advertise the OSR Apparatus.  For example,
         OSR's Internet website as well as its other advertising materials
         do not depict the entire OSR Apparatus through a photograph, diagram
         or other visual aid;

      b.    OSR has required its divers, including Pirl, to execute Confidentiality
         and Non-Disclosure Agreements to protect OSR trade secrets;

      c.    OSR's executive staff does not allow customer contact
         information to be freely disseminated to OSR representatives such
         as its divers; and,

      d.    OSR's executive staff attempts to restrict information regarding OSR's
         pricing to OSR's executive and sales staff (excluding divers) who
         need to know such information.  For example, OSR does not advertise
         its pricing information or variables that affect pricing.

16.    During his employment at OSR, Pirl became fully aware that OSR had started to franchise its business at a cost of $100,000.00 per franchise. Instead of legitimately franchising from OSR, Pirl, as of in or around October, 2006 and perhaps earlier, breached the Confidentiality Agreement and breached his other legal duties by the following:

a.    By using a device similar to the OSR Apparatus in US' business operations. Upon information and belief, Pirl, while employed at OSR, illicitly took photographs of the OSR Apparatus to enable him to attempt to replicate the OSR Apparatus for use in US' business operations;

b.    By using methodologies, systems, procedures and protocols that he learned while employed at OSR in US' business operations;

c.    By using knowledge of OSR's pricing information illicitly obtained while employed by OSR to undercut OSR in bidding and to otherwise gain an improper competitive advantage;

d.    By using knowledge of OSR's customer contact information illicitly obtained while employed by OSR to contact potential OSR customers on behalf of US;

e.    By publishing marketing materials which are identical or at least substantially similar to aspects of OSR's marketing materials;

f.    By publishing OSR's confidential information to the public-at-large, including, but not limited to, a magazine article; and,

g.    By otherwise misappropriating OSR Trade Secrets in US' business operations.

17.    Prior to his affiliation with OSR, Pirl, upon information and belief, had worked in the business of shipping and receiving and other areas totally unrelated to OSR's business. Therefore, prior to his affiliation with OSR, Pirl did not have the technical expertise and knowledge to attempt to compete with OSR. After his affiliation with OSR, however, Pirl acquired such technical expertise and knowledge through his misappropriation of OSR's Trade Secrets, breaches of the Confidentiality Agreement and breaches of his other legal duties.

5

18.    OSR has made written demand for the return of its trade secrets on at least two (2) separate occasions and Pirl on both occasions has failed to accede to such demands.

## COUNT I-VIOLATION OF ILLINOIS TRADE SECRETS ACT
### (BOTH DEFENDANTS)

19.    OSR adopts and reincorporates paragraphs 1-18 by and for paragraph 19 of Count I as if more fully alleged herein.

20.    At all times relevant to this lawsuit, there was in full force and effect in the State of Illinois the Illinois Trade Secrets Act ("ITSA") (765 ILCS 1065/1, *et seq.*).

21.    Defendants, as alleged herein, violated the ITSA by misappropriating the OSR Trade Secrets, which would be included in the definition of "trade secrets" per Section 2(b) of the ITSA, and using the same in the Defendants' business. Defendants both acquired the OSR Trade Secrets by improper means, and Pirl disclosed the OSR Trade Secrets without OSR's consent to US.

22.    OSR is entitled to injunctive relief pursuant to Section 3 of the ITSA as to the Defendants' actual and threatened misappropriation. Further, OSR is entitled to damages pursuant to Section 4 of the ITSA in the amount of OSR's actual loss or the Defendants' unjust enrichment, to be proven at trial but in the amount of at least $75,000.00 exclusive of interest and costs.

23.    OSR is also entitled to an award of damages in the amount of twice its actual damages, to be proven at trial, pursuant to Section 4 of the ITSA as the Defendants' misappropriation was willful, malicious, calculated and premeditated.

24.    OSR is also entitled to an award of its reasonable attorney's fees by virtue of Defendants' willful and malicious misappropriation of OSR's Trade Secrets pursuant to Section 5 of the ITSA.

WHEREFORE, Plaintiff, ORGANIC SEDIMENT REMOVAL SYSTEMS, LIMITED LIABILITY COMPANY, prays for the following relief against the Defendants, BRIAN PIRL and MIDWEST CAPS & ACCESSORIES, INC. d/b/a US AQUA VAC INC.:

A.    An injunction, preliminary until a hearing on the merits and then permanent that:

1.    Enjoins Defendants and their assigns and representatives from acquiring, using or disclosing any confidential information of Plaintiff.

2.    Enjoins Defendants to return all confidential information of Plaintiff in their possession or control.

B.    A judgment in favor of the Plaintiff and against both Defendants, jointly and severally, in an amount to be determined at trial, but in the amount of at least $75,000.00, exclusive of interest and costs, to compensate Plaintiff for any losses proximately caused by Defendants' wrongful conduct; in the amount of Defendants' unjust enrichment through their misconduct; and for exemplary damages.

C.    Grant Plaintiff the costs of this action, plus reasonable attorney's fees, and such other and further relief as is just and appropriate.

### COUNT II-VIOLATION OF WISCONSIN TRADE SECRETS ACT
### (BOTH DEFENDANTS)
### (ALTERNATIVE TO COUNT I)

25.    OSR adopts and reincorporates paragraphs 1-24 by and for paragraph 25 of Count II as if more fully alleged herein.

26.    The Confidentiality Agreement is governed by Wisconsin law. Therefore, Wisconsin law is to apply to the extent that Illinois law does not apply and OSR pleads Count II in the alternative to Count I.

27.     At all times relevant to this lawsuit, there was in full force and effect in the State of Wisconsin the Uniform Trade Secrets Act ("UTSA") (W.S.A. § 134.90, *et seq.*).

28.     Defendants, as alleged herein, violated the UTSA by misappropriating the OSR Trade Secrets, which would be included in the definition of "trade secrets" per Section 1(c) of the UTSA, and using the same in the Defendants' business.  Defendants both acquired the OSR Trade Secrets by improper means, and Pirl disclosed the OSR Trade Secrets without OSR's consent to US.

29.     OSR is entitled to injunctive relief pursuant to Section 3 of the UTSA as to the Defendants' actual and threatened misappropriation.  Further, OSR is entitled to damages pursuant to Section 4 of the UTSA in the amount of OSR's actual loss or the Defendants' unjust enrichment, to be proven at trial but in the amount of at least $75,000.00 exclusive of interest and costs.

30.     OSR is also entitled to an award of damages in the amount of twice its actual damages, to be proven at trial, pursuant to Section 4 of the UTSA as the Defendants' misappropriation was willful, malicious, calculated and premeditated.

31.     OSR is also entitled to an award of its reasonable attorney's fees by virtue of Defendants' willful and malicious misappropriation of OSR's Trade Secrets pursuant to Section 4 of the UTSA.

WHEREFORE, Plaintiff, ORGANIC SEDIMENT REMOVAL SYSTEMS, LIMITED LIABILITY COMPANY, prays for the following relief against the Defendants, BRIAN PIRL and MIDWEST CAPS & ACCESSORIES, INC. d/b/a US AQUA VAC INC.:

A.     An injunction, preliminary until a hearing on the merits and then permanent that:

1.      Enjoins Defendants and their assigns and representatives from acquiring, using or disclosing any confidential information of Plaintiff.

2.      Enjoins Defendants to return all confidential information of Plaintiff in their possession or control.

B.      A judgment in favor of the Plaintiff and against both Defendants, jointly and severally, in an amount to be determined at trial, but in the amount of at least $75,000.00, exclusive of interest and costs, to compensate Plaintiff for any losses proximately caused by Defendants' wrongful conduct; in the amount of Defendants' unjust enrichment through their misconduct; and for exemplary damages.

C.      Grant Plaintiff the costs of this action, plus reasonable attorney's fees, and such other and further relief as is just and appropriate.

## COUNT III- BREACH OF DUTY OF LOYALTY AND HONESTY
## (PIRL)

32.      OSR adopts and reincorporates paragraphs 1 through 31 by and for paragraph 32 of Count III as if more fully alleged herein.

33.      While employed by OSR, Pirl owed OSR a duty of loyalty and honesty.

34.      Regardless of the Defendants' misappropriation of the OSR Trade Secrets, Pirl violated his duty of loyalty and honesty to OSR by usurping OSR's corporate opportunities aside and apart from misappropriating OSR's Trade Secrets.

35.      OSR suffered actual damages as a result of Pirl's breach of his duty of loyalty and honesty in the form of lost business, to be proven at trial, but in the amount of at least $75,000.00 exclusive of interest and costs.

36.    Pirl's breach of his duty of loyalty and honesty to OSR was willful and malicious, subjecting Pirl to an award of punitive damages in an amount to be determined at trial, but no less than ten times actual damages.

37.    OSR is further entitled to an award of its reasonable attorney's fees, not as an exception to the "American Rule," but instead as compensatory damages.

WHEREFORE, Plaintiff, ORGANIC SEDIMENT REMOVAL SYSTEMS, LIMITED LIABILITY COMPANY, prays for the following relief against the Defendant, BRIAN PIRL:

A.    Requiring Pirl to return to Plaintiff all personal and intellectual property converted by Pirl.

B.    A judgment in favor of the Plaintiff and against Pirl in an amount to be determined at trial, but no less than $75,000.00 exclusive of interest and costs, to compensate Plaintiff for any losses proximately caused by Pirl's wrongful conduct; and for exemplary damages.

C.    Grant Plaintiff the costs of this action, plus reasonable attorney's fees, and such other and further relief as is just and appropriate, including, but not limited to, the imposition of a constructive trust.

## COUNT IV-BREACH OF THE CONFIDENTIALITY AGREEMENT
### (PIRL ONLY)

38.    OSR adopts and reincorporates paragraphs 1 through 37 by and for paragraph 38 of Count IV as if more fully alleged herein.

39.    The Confidentiality Agreement was at all relevant times binding and valid upon Pirl and the terms thereof were reasonable and necessary to protect OSR's legitimate business interests.

40.    Pirl breached the Confidentiality Agreement by virtue of his conduct alleged herein.

41.    OSR complied with all material terms of the Confidentiality Agreement.

42.    OSR suffered damages as a direct and proximate result of Pirl's breaches of the Confidentiality Agreement.

WHEREFORE, Plaintiff, ORGANIC SEDIMENT REMOVAL SYSTEMS, LIMITED LIABILITY COMPANY, prays for the following relief against the Defendant, BRIAN PIRL:

A.    A judgment in favor of the Plaintiff and against Pirl in an amount to be determined at trial, but no less than $75,000.00 exclusive of interest and costs.

B.    Grant Plaintiff the costs of this action and such other and further relief as is just and appropriate.

## COUNT V-TORTIOUS INTERFERENCE WITH CONFIDENTIALITY AGREEMENT
### (US ONLY)

43.    OSR adopts and reincorporates paragraphs 1 through 42 by and for paragraph 43 of Count V as if more fully alleged herein.

44.    At all relevant times, OSR and Pirl had a valid agreement in the Confidentiality Agreement; US (by and through Pirl) was aware of the existence of this valid agreement; US tortiously induced Pirl to breach the Confidentiality Agreement, and, as a result, OSR suffered damages.

45.    US' tortious interference was willful and malicious and therefore US is subject to an award of punitive damages.

WHEREFORE, Plaintiff, ORGANIC SEDIMENT REMOVAL SYSTEMS, LIMITED LIABILITY COMPANY, prays for the following relief against the Defendant MIDWEST CAPS & ACCESSORIES, INC. d/b/a US AQUA VAC INC.:

11

A.     A judgment in favor of the Plaintiff and against US, in an amount to be determined at trial to compensate Plaintiff for any losses proximately caused by US' wrongful conduct; and for exemplary and punitive damages.

B.     Grant Plaintiff the costs of this action, plus reasonable attorney's fees, and such other and further relief as is just and appropriate.

**COUNT VI-TORTIOUS INTERFERENCE WITH
PROSPECTIVE BUSINESS ADVANTAGE
(BOTH DEFENDANTS)**

46.     OSR adopts and reincorporates paragraphs 1 through 45 by and for paragraph 46 of Count VI as if more fully alleged herein.

47.     OSR had reasonable expectations of entering into valid business relationships with prospective customers; Defendants knew of OSR's reasonable expectations; Defendants purposefully interfered to prevent Defendants' expectancies from being fulfilled, and OSR suffered damages as a direct and proximate result of Defendants' tortious interference.

48.     Defendants' tortious interference was willful and malicious and therefore Defendants are subject to an award of punitive damages.

WHEREFORE, Plaintiff, ORGANIC SEDIMENT REMOVAL SYSTEMS, LIMITED LIABILITY COMPANY, prays for the following relief against the Defendants, BRIAN PIRL and MIDWEST CAPS & ACCESSORIES, INC. d/b/a US AQUA VAC INC.:

A.     A judgment in favor of the Plaintiff and against both Defendants, jointly and severally, in an amount to be determined at trial to compensate Plaintiff for any losses proximately caused by Defendants' wrongful conduct; in the amount of Defendants' unjust enrichment through their misconduct; and for exemplary damages.

B.     Grant Plaintiff the costs of this action, plus reasonable attorney's fees, and such

other and further relief as is just and appropriate.

### COUNT VII-ACTION FOR AN ACCOUNTING
### (BOTH DEFENDANTS)

49.    OSR adopts and reincorporates paragraphs 1 through 48 by and for paragraph 49

of Count VII as if more fully alleged herein.

50.    Pleading in the alternative, OSR has no adequate remedy at law, and by virtue of

the Defendants' misconduct, including, but not limited to, Pirl's breach of his duty of loyalty and

the need for discovery, Defendants should be ordered to provide OSR with a full accounting of

all of their receipts and disbursements from January 1, 2005 to the present, and, OSR should be

entitled to a judgment in its favor and against all Defendants as to all amounts owed by

Defendants to OSR as shown through the accounting process.

WHEREFORE, Plaintiff, ORGANIC SEDIMENT REMOVAL SYSTEMS, LIMITED

LIABILITY COMPANY prays for the following relief against the Defendants, BRIAN PIRL

and MIDWEST CAPS & ACCESSORIES, INC. d/b/a US AQUA VAC INC.:

A.    A detailed accounting of all receipts and disbursements of the Defendants

for the time period of January 1, 2005 through the present as well as backup

documentation.

B.    Grant Plaintiff the costs of this action and such other and further relief as is just

and appropriate.

### COUNT VIII-UNJUST ENRICHMENT
### (BOTH DEFENDANTS)

51.    OSR adopts and reincorporates paragraphs 1 through 50 by and for paragraph 51

of Count VIII as if more fully alleged herein.

52.    Pleading in the alternative, it would violate fundamental principles of equity and good conscience if Defendants were allowed to retain the fruits of their unjust enrichment.

53.    Accordingly, OSR is entitled to an award of damages in an amount of at least $75,000.00, exclusive of costs and interest, by virtue of Defendants' unjust enrichment whether or not OSR's confidential information is deemed to be a "trade secret" under applicable law.

WHEREFORE, Plaintiff, ORGANIC SEDIMENT REMOVAL SYSTEMS, LIMITED LIABILITY COMPANY, prays for the following relief against the Defendants, BRIAN PIRL and MIDWEST CAPS & ACCESSORIES, INC. d/b/a US AQUA VAC INC.:

A.    A judgment in favor of the Plaintiff and against both Defendants, jointly and severally, in an amount to be determined at trial, but at least $75,000.00 exclusive of costs and interest, plus exemplary and punitive damages.

B.    Grant Plaintiff the costs of this action and such other and further relief as is just and appropriate, including, but not limited to, the imposition of a constructive trust as to all amounts wrongfully obtained by the Defendants.

## COUNT IX-CONVERSION
### (BOTH DEFENDANTS)

54.    OSR adopts and reincorporates paragraphs 1 through 53 by and for paragraph 54 of Count IX as if more fully alleged herein.

55.    Pleading in the alternative, to the extent that any of the information alleged to be confidential by OSR is not deemed to constitute a trade secret, Defendants have asserted dominion or control over OSR's information; OSR has an immediate, absolute and unconditional right to possession of said information; OSR has demanded that Defendants return and refrain from using said information; but Defendants have asserted and continue to assert wrongful dominion and control over said information.

14

56.    Accordingly, OSR is entitled to an award of damages in an amount of at least $75,000.00, exclusive of costs and interest, by virtue of Defendants' conversion.

57.    Defendants' conversion has been willful and calculated and therefore OSR is entitled to an award of damages in an amount not less than ten times actual damages.

WHEREFORE, Plaintiff, ORGANIC SEDIMENT REMOVAL SYSTEMS, LIMITED LIABILITY COMPANY, prays for the following relief against the Defendants, BRIAN PIRL and MIDWEST CAPS & ACCESSORIES, INC. d/b/a US AQUA VAC INC.:

A.    A judgment in favor of the Plaintiff and against both Defendants, jointly and severally, in an amount to be determined at trial, but at least $75,000.00, exclusive of costs and interest, plus exemplary and punitive damages.

B.    Grant Plaintiff the costs of this action and such other and further relief as is just and appropriate, including, but not limited to, the imposition of a constructive trust as to all amounts wrongfully obtained by the Defendants.

**JURY TRIAL DEMANDED**

Respectfully submitted,

ORGANIC SEDIMENT REMOVAL SYSTEMS,
LIMITED LIABILITY COMPANY,

_____
One of Its Attorneys

Robert H. Lang (6225414)
Holland & Knight LLP
131 South Dearborn Street, Suite 3000
Chicago, IL 60603
(312) 263-3600
# 5073678_v1

15

A

## CONFIDENTIALITY AND
## NON-DISCLOSURE AGREEMENT

**THIS AGREEMENT**, made and entered into on this date by and between ORGANIC SEDIMENT REMOVAL SYSTEMS, a/k/a O.S.R. SYSTEMS, of Necedah, WI, party of the first part, hereafter referred to as "Disclosing Party", and ___Brian Rio___ of ___Monee, IL_____, party of the second part, hereafter referred to as "Receiving Party" is as follows:

### BACKGROUND

The Disclosing Party will be employing and training the Receiving Party to perform duties in connection with the Disclosing Party's business. The Disclosing Party will reveal to the Receiving Party certain items and information related to business programs, products, applications, components, technologies and business methods which parties hereto consider highly confidential and proprietary.

NOW THEREAFTER, the parties hereto, intend to be legally bound in consideration of the mutual covenants and agreements set for the herein, hereby agree as follows:

### THE AGREEMENT

1. DEFINITIONS

**"Business Trade Secrets"** shall mean all information relating to business programs, products, applications, systems, technologies and business procedures.

**"Confidential Information"** shall mean all information provided by Disclosing Party with respect to the business trade secrets regardless of whether it is written, oral, audio tapes, video tapes, computer disks, machines, prototypes, designs, specifications, customer lists, articles of manufacture, drawings, human or machine readable documents. Confidential Information shall also include all information related to the business trade secrets provided by Disclosing Party to Receiving Party prior to the signing of this agreement. Confidential Information shall <u>not</u> included any of the following:

    (a)    such information in the public domain at the time of the disclosure, or subsequently comes within the public domain without fault of the Receiving Party;

(b)   such information which was in the possession of Receiving Party at the time of disclosure that may be demonstrated by business records of Receiving Party and was not acquired, directly or indirectly, from the Disclosing Party; or

(c)   such information which Receiving Party acquired after the time of disclosure from a third party who did not require Receiving Party to hold the same confidence and who does not acquire such technical information from Disclosing Party.

**"Disclosing Party"** shall mean the party disclosing information to the other relating to the business trade secrets.

**"Receiving Party"** shall mean the party receiving information from the other relating to the business trade secrets.

## 2.  USE OF CONFIDENTIAL INFORMATION

The Receiving Party agrees to:

(a) receive and maintain the Confidential Information in strict confidence;

(b) not reproduce the Confidential Information or any part thereof without the express written consent of Disclosing Party;

(c) not, directly or indirectly, make known, divulge, publish or communicate the Confidential Information to any person, firm or corporation without the express written consent of Disclosing Party;

(d) limit the public discussion of the Confidential Information and the disclosure of the Confidential Information received from the Disclosing Party to anyone else;

(e) not use or utilize the Confidential Information without the express written consent of Disclosing Party;

(f) not use the Confidential Information or any part thereof as a basis for the creation of any method, systems, business or product similar to the Disclosing Party's products embodied in the Confidential Information unless expressly authorized in writing by Disclosing Party' and

(g) utilize the best efforts possible to protect and safeguard the Confidential Information from loss, theft, destruction, or the like.

## 3. RETURN OF CONFIDENTIAL INFORMATION

All information provided by the Disclosing Party shall remain the property of the Disclosing Party. Receiving Party agrees to return all copies of any Confidential Information to Disclosing Party within fifteen (15) days of written demand by Disclosing Party without retaining any copies.

## 4. NON-ASSIGNABLE

This Agreement shall be non-assignable by the Receiving Party unless prior written consent of the Disclosing Party is received. If this Agreement is assigned or otherwise transferred, it shall be binding on all successors and assigns.

## 5. GOVERNING LAW

The validity of this Agreement and all rights and obligations of the parties shall be governed by the internal laws of the State of Wisconsin and not by the laws pertaining to choice or conflict of laws and without the aid of any canon, custom or rule of law requiring construction against the draftsman.

## 6. VENUE

Venue for any dispute arising under this agreement or any disputes among any parties to this agreement shall be the county in which the Disclosing Party maintains it's principal business office.

## 7. NO LICENSE

Neither party does, by virtue of disclosure of the Confidential Information, grant, either expressly or by implication, estoppel or otherwise, any right or license to any patent, trade secret, business trade secrets, trademark, copyright, or other intellectual property right.

## 8. BINDING AGREEMENT

This Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective heirs, personal representatives, successors and assigns.

## 9. PROVISIONS SEPARABLE

If any provision of this Agreement is declared by a court of competent jurisdiction to be invalid for any reason, then insofar as reasonable or possible, the remainder of this Agreement and the application of such provision to other persons or circumstances shall not be affected, but shall be considered valid, operative, and enforceable to the maximum extent possible under the law. Effect shall be given to the intent manifested by that portion held invalid or inoperative.

## 10. ENTIRE AGREEMENT

This Agreement sets forth the entire understanding of the parties and supersedes all prior agreements and understandings. There are no side agreements, except those which are in writing, signed and agreed to by all parties. No subsequent alteration, amendment, change or addition to this Agreement shall be binding upon either party unless reduced in writing and signed by them.

## 11. DISPUTE RESOLUTION

In the event any dispute cannot be reconciled, the parties may agree to submit the matter to Arbitration or Mediation. Arbitration or Mediation is a totally voluntary process and no interested party may be ordered or forced to participate in alternative dispute resolution methods. If the parties cannot agree, any party shall be free to file appropriate court action to pursue their legal rights and remedies.

IN WITNESS WHEREOF, the parties to this Agreement have set their hands and seals to this Confidentiality and Non-Disclosure Agreement and upon signing, each party acknowledges receipt of a signed and completed copy of same, and admits that they have read the foregoing and understands the terms and conditions and agrees thereto.

DATED: _____*May   8*_____, 20 *06*___.

WITNESSES:

_____

_____

**Disclosing Party:**

By: _____

**Receiving Party:**

By: _____

STATE OF WISCONSIN          )
                            )ss
COUNTY OF                   )

Personally came before me this _____ day of _____, 20_____, the above named signatories, to me known to be the persons who executed the foregoing instrument and acknowledge the same.

_____
Notary Public:
State of Wisconsin
My commission expires: