IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ORGANIC SEDIMENT REMOVAL SYSTEMS, LIMITED LIABILITY COMPANY, a Wisconsin Limited Liability Company,

Plaintiff,

v.

BRIAN PIRL and MIDWEST CAPS & ACCESSORIES, INC., d/b/a AQUA VAC INC., an Illinois corporation,

Defendants.

No. 08 C 976

Judge Aspen

Magistrate Judge Nolan

**DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

Defendants, BRIAN PIRL ("Pirl") and MIDWEST CAPS & ACCESSORIES, INC., d/b/a U.S. AQUA VAC INC. ("Aqua Vac"), by their attorneys, David S. Wayne, Hal R. Morris and Jenifer H. Caracciolo, Arnstein & Lehr LLP, *of counsel*, pursuant to Federal Rule of Civil Procedure 12(b)(6), move to dismiss Organic Sediment Removal Systems, LLC's ("OSR" or "plaintiff") complaint. In support of its motion, Defendants state as follows:

**Introduction**

On February 15, 2008, plaintiff filed a nine (9) count complaint against defendants, alleging violations of the Illinois and Wisconsin Trade Secrets Acts (Counts I and II); breach of duty of loyalty and honesty by Pirl (Count III), breach of confidentiality agreement by Pirl (Count IV), tortious interference with confidentiality agreement by Aqua Vac (Count V), tortious interference with prospective business advantage (Count VI), accounting (Count VII), unjust enrichment (Count VIII), and conversion (Count IX).

Plaintiff's complaint stems from its previous employment relationship with Pirl, who left OSR to pursue his own career with Aqua Vac. Specifically, OSR is in the business of cleaning ponds and other waterways with its OSR apparatus. (Complaint, ¶¶ 6-7). Pirl was employed as a diver by OSR. (Complaint, ¶ 8). Plaintiff further

alleges that the OSR Apparatus uses specialized methods, technologies and processes by using different sized hoses, pumps, and filters to clean the bottom of waterways. (Complaint, ¶ 7). Plaintiff asserts that somehow this commercially available equipment, and the assembly, development, function, techniques, pricing information, potential customer contacts and "other information," are purportedly trade secrets. (Complaint, ¶ 14). To protect these purported trade secrets, OSR requires its employees, Pirl included, to execute a confidentiality and non-disclosure agreement, which has no limitation in time or scope. (Complaint ¶ 15, Exhibit A).

In October 2006, Pirl left plaintiff's employ on his own accord and started working as Aqua Vac. (Complaint, ¶ 16). Seemingly put off by the fact that Pirl did not want to franchise with OSR, it now claims that Pirl took knowledge with him that is somehow a violation of its rights and a breach of the Confidentiality Agreement. Specifically, plaintiff claims that defendants breached the Confidentiality Agreement by using a device similar to the OSR Apparatus; using similar methodologies, pricing information, customer contact information, marketing materials and by publishing OSR's "confidential" information to the public. (Complaint, ¶ 16).

Seen for what it really is, plaintiff's complaint repetitively alleges the same claims in nine different counts. Additionally, the common law claims in this case (Counts III, VI, VII, VIII and IX) rely entirely on the same facts as alleged in plaintiff's trade secret claims, and are thus inextricably linked to the trade secret claims and preempted by both the Illinois and Wisconsin Trade Secrets Acts. As a whole, plaintiff's complaint fails to support its conclusory allegations with enough facts to show that any of the claims are plausible on their face. Thus, Plaintiff's complaint is deficient as a matter of law, and should be dismissed.

**Argument**

As a threshold matter, even under a notice pleading standard, plaintiff must articulate some facts to support its claims for relief. Sutliff, Inc. v. Donovan Cos., Inc., 727 F.2d 648, 654 (7th Cir. 1984). A complaint must be more than "a naked conclusion without any support in the complaint's substantive allegations. Teradyne, Inc. v. Clear Comm. Corp., 707 F. Supp. 353 (N.D. Ill. 1989). To be sure, the Federal Rules allow notice pleading, but even their low threshold requires facts. Pete Thoesen Tractor v.

City of Chicago, 101 F.R.D. 734, 735 (N. D. Ill. 1984). "Vague, conclusory allegations [are] insufficient to provide the necessary 'fair notice to defendant[s].'" Hornug v. Village of Park Forest, 634 F. Supp. 540, 547 (N.D. Ill. 1986)

A motion to dismiss under Rule 12(b)(6) challenges the complaint on the basis of a failure to state a claim on which relief can be granted. In ruling on the motion, the Court must accept as true all well pleaded facts alleged in the complaint and view them in the light most favorable to the non-moving party. Jackson v. E.J. Branch Corp., 176 F.3d 971, 977 (7th Cir. 1999). The complaint must allege "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, -- U.S. --, ---, 127 S. Ct. 1955, 1974 (2007). Plaintiff must provide enough detail to give defendants fair notice of its claims, show that the claims are plausible, rather than merely speculative, and that relief is warranted. EEOC v. Concentra Health Care Servs. Inc., 496 F.3d 773, 776 (7th Cir. 2007).

Here, plaintiff's complaint does nothing more than demonstrate that any of its claims are merely speculative, and thus, must be dismissed.

**A. Counts I and II Fail to State a Claim under the Illinois and Wisconsin Trade Secrets Acts.**

To succeed on a claim for misappropriation of trade secrets under the Illinois Trade Secrets Act ("ITSA"), a plaintiff must demonstrate that the information was: (1) a trade secret; (2) misappropriated; and (3) used in the defendant's business. Learning Curve Toys, Inc. v. PlayWood Toys, Inc., 342 F.3d 714, 721 (7th Cir. 2003); Fast Food Gourmet, Inc. v. Little Lady Foods, Inc., -- F. Supp. 2d --, 2008 WL 918431, at *11 (N.D. Ill. April 3, 2008). ITSA defines a trade secret as information that

> (1) is sufficiently secret to derive economic value, actual or potential, from not being generally known to other persons who can obtain economic value from its disclosure or use; and (2) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy or confidentiality.

765 ILCS 1065/2(d). In addition, Illinois courts refer to six Restatement factors as "instructive guidelines for ascertaining whether a trade secret exists under the Act." Learning Curve, Inc., 342 F.3d at 722. These factors include:

> (1) the extent to which the information is known outside of the plaintiff's business; (2) the extent to which the information is known by employees and others involved in the plaintiff's business; (3) the extent of measures taken by the plaintiff to guard the secrecy of the information; (4) the value of the information to the plaintiff's business and to its competitors; (5) the amount of time, effort, and money expended by the plaintiff in developing the information; and (6) the ease or difficulty with which the information could be properly acquired or duplicated by others. Id.

Similarly, under the Wisconsin Trade Secrets Act ("WTSA"), no person may misappropriate a trade secret by

> disclosing or using without express or implied consent a trade secret if the person . . . (2) at the time of the disclosure or use, knew or had reason to know that he or she obtained knowledge of the trade secret through any of the following means . . . (b) acquiring it under circumstances giving rise to a duty to maintain its secrecy or limit its use.[1]

Wis. Stat. § 134.90(2)(b). Section 134.90(1)(c) of the WTSA defines a trade secret as information that:

> (1) derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use, and (2) the information is the subject of efforts to maintain its secrecy that are reasonable under the circumstances.

Here, the purported "trade secrets" that form the basis of plaintiff's claims are the following: "the assembly of the OSR Apparatus," "the development of the OSR Apparatus," "the function of the various components of the OSR Apparatus," "techniques in using the OSR Apparatus," "pricing information," "potential customer contacts," and "other information that can be classified as "trade secrets" under Illinois or Wisconsin law." (Complaint, ¶ 14). However, these alleged "trade secrets" are insufficient to state a legally recognizable claim. Accordingly, plaintiff's claims must be dismissed.

As an initial matter, plaintiff's complaint is legally deficient because it fails to allege any trade secret with the necessary specificity. The law is clear that a plaintiff "cannot state a claim for trade secret protection under the Act by simply 'producing long lists of general areas of information which contain unidentified trade secrets.' Instead,

[1] As this Court can see, claims under the ITSA and WTSA require similar showings of proof.

he must articulate protectable trade secrets with specificity or suffer dismissal of his claim." Nilssen v. Motorola, Inc., 963 F. Supp. 664, (N.D. Ill. 1997) (applying Illinois law) (quoting Lear Siegler, Inc. v. Glass Plastics Corp., 1987 WL 15749, at *2 (N.D. Ill. Aug. 12, 1987) (applying Illinois law)); ECT Intern., Inc. v. Zwerlein, 597 N.W.2d 479, 482 (Wis. App. 1999). Clearly, plaintiff's identification of the general areas of information which are "critical to OSR's business" is legally insufficient. Quite simply, plaintiff has completely failed to identity what, if anything, about this information makes it "secret," "confidential," or "proprietary." As stated in Composite Marine Propellers, Inc. v. Van Der Woude, 962 F.2d 1263, 1266 (7th Cir. 1992), "[i]t is not enough to point to broad areas of technology and assert that something there must have been secret and misappropriated. The plaintiff must show concrete secrets."

Plaintiff also fails to allege how its purported trade secrets "derive independent economic value," as required by both Acts. 765 ILCS 1065/2(d); Wis. Stat. § 134.90(1)(c). In fact, plaintiff unilaterally alleges what its trade secrets are, what it did to keep that information secret, and how defendants allegedly misappropriated those secrets. (Complaint, ¶¶ 14-16). However, plaintiff's complaint is missing a key element of its claim, namely how this secret information "derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use." 765 ILCS 1065/2(d); Wis. Stat. Section 134.90(1)(c)(1); Bondpro Corp. v. Siemens, 463 F.3d 702, 709 (7th Cir. 2006). This element is particularly important because both ITSA and WTSA specifically "preclude trade secret protection for information generally known or understood within an industry even if not to the public at large." Learning Curve Toys, Inc. v. Playwood Toys, 342 F.3d 714, 722 (7th Cir. 2003).

Even assuming *arguendo* that plaintiff sufficiently alleged the existence of a trade secret, Counts I and II are deficient as a matter of law. A necessary element of any claim for trade secret protection is that the alleged trade secret provides an economic benefit to the plaintiff. However, plaintiff's unilateral inaction belies any claim that the purported trade secrets are valuable. Here, plaintiff waited until February 15, 2008,

over sixteen (16) months after Pirl left OSR in October 2006, to file suit for damages and injunctive relief. Had the trade secrets had real value to OSR, certainly it would not have waited to bring this action. Only one reasonable inference is available: the purported secrets do not have sufficient value to OSR. Had these had value, certainly OSR would have taken immediate affirmative measures to prevent others from using its proprietary information. Thus, plaintiff's claims for trade secret misappropriation must be dismissed.

### B. Counts III and V-IX Are Preempted by the Illinois Trade Secrets Act and Wisconsin Trade Secrets Act.

ITSA "is intended to displace conflicting tort, restitutionary, unfair competition, and other laws of [the State of Illinois] providing civil remedies for misappropriation of a trade secret." 765 ILCS 1065/8(a). Similarly, WTSA provides that "this section displaces conflicting tort law, restitutionary law and any other law of this state providing a civil remedy for misappropriation of a trade secret." Wis. Stat. § 134.90(6)(a). In other words, ITSA and WTSA "abolish[] claims other than those based on contracts arising from misappropriated trade secrets." Hecny Transp., Inc. v. Chu, 430 F.3d 402, 404 (7th Cir. 2005). The test for a non-ITSA or WTSA claim is "whether the plaintiff's claim would lie if the information at issue were non-confidential." See Hecny, 430 F.3d at 405; RTC Industries, Inc. v. Haddon, 2007 WL 2743583, at *3 (N.D. Ill. Sept. 10, 2007) (Grady, J.).

Here, as plead, Count III (Breach of Duty of Loyalty and Honesty); Count V (Tortious Interference with Confidentiality Agreement); Count VI (Tortious Interference with Prospective Business Advantage); Count VII (Action for Accounting); Count VIII (Unjust Enrichment) and Count IX (Conversion) rest on the very same conduct which plaintiff alleges gives rise to its misappropriation of trade secrets claims. (Counts I and II). Even when viewing the allegations in the light most favorable to plaintiff, its claims for relief cannot withstand scrutiny. Specifically, in Count III (breach of duty of loyalty and honesty), plaintiff asserts that "regardless of the Defendant's misappropriation of the OSR Trade Secrets, Pirl violated his duty of loyalty and honesty by usurping OSR's corporate opportunities aside and apart from misappropriating OSR's Trade Secrets." (Complaint, ¶ 34). Plaintiff's entire claim for relief rests on this single conclusory

statement, which simply does not "raise a right to relief above the speculative level." Twombly, 127 S. Ct. at 1965. All of the preceding allegations stem from the same issue: the alleged misappropriation of plaintiff's trade secrets. Similarly, none of the allegations referenced in the remaining counts can survive if the information at issue were non-confidential:

- Count V (tortious interference with confidentiality agreement): Plaintiff's tortious interference with confidentiality agreement claim "adopts and reincorporates" all of the previous factual allegations concerning defendants' alleged conduct and plaintiff's injury. (Complaint, ¶ 43). The only inference that can be made with respect to plaintiff's remaining allegation is that defendant Aqua Vac induced Pirl to breach the Confidentiality Agreement for the sole purpose of misappropriating plaintiff's trade secrets. (Complaint, ¶ 44).

- Count VI (tortious interference with prospective business advantage): This claim also "adopts and reincorporates" all of the same factual allegations concerning defendants' alleged conduct relating to their purported misappropriation of OSR's trade secrets. Plaintiff has not alleged a single fact in paragraph 47 of its complaint to demonstrate that this claim can survive if the information at issue is non-confidential.

- Count VII (action for accounting): This claim stems from Plaintiff's allegations that Pirl arguably breached his duty of loyalty by misappropriating OSR's asserted trade secrets, thus requiring the need for an accounting of Aqua Vac's receipts and disbursements (Complaint ¶ 50).

- Count VIII (unjust enrichment): On its face, this count specifically relies upon the assumption that plaintiff's information is either confidential or a trade secret. (Complaint, ¶ 53). Such allegations clearly undermine the necessary showing that plaintiff's claim would lie if the information at issue were non-confidential. See Hency, 430 F.3d at 405; RTC Industries, Inc. v. Haddon, 2007 WL 2743583, at *3 (N.D. Ill. Sept. 10, 2007) (Grady, J.).

- Count IX (conversion): Plaintiff's claim for conversion is also undermined by the very allegations contained in this count. (Complaint ¶ 55) Specifically, plaintiff alleges that "to the extent at any of the information alleged to be confidential by OSR is not deemed to constitute a trade secret," defendants converted that information. See Concentra Health Services, Inc., 496 F.3d 773, 2007 WL 2215764, at *3.

To the extent this Court needs further guidance on this issue, it should be noted that courts in this district routinely dismiss each of the above claims as preempted by an ITSA claim. In Systems America, Inc. v. Providential Bancorp, Ltd., plaintiff's

conversion claim was dismissed based on preemption under the ITSA, because the claim rested on defendant's alleged misappropriation of plaintiff's trade secrets. 2006 WL 463314, at *6-7 (N.D. Ill. Feb. 24, 2006); see also Cardionet, Inc. v. Lifewatch Corp., 2008 WL 567223, at *3 (N.D. Ill. Feb. 27, 2008) (Conlon, J.) (finding that plaintiff's conversion claim is preempted to the extent it alleges conversation of confidential, proprietary, and trade secret information). Similarly, in Bondpro Corporation v. Siemens Westinghouse Power Corp., 320 F. Supp. 2d 804, 807 (W.D. Wis. 2004), the court dismissed plaintiff's unjust enrichment claim with prejudice because it relied upon the factual allegation of a misappropriated trade secret. See also Stafford Trading, Inc. v. Lovely, 2007 WL 1512417, at *11 (N.D. Ill. May 21, 2007) (preempting defendants' counterclaim for unjust enrichment because the conduct for which they complained rested on the misappropriation of trade secrets); Thomas & Betts Corp. v. Panduit Corp., 108 F. Supp. 2d 968 (N. D. Ill. 2000) (finding that plaintiff's claim for tortious interference with confidentiality agreement is preempted by ITSA because the allegations were based on a misappropriation of trade secrets).

Here, it is clear from the conclusory allegations contained in Counts III and V-IX that plaintiff's facts are not enough to raise a right to relief above the speculative level. Moreover, the claims as brought, whether in conclusory fashion or not, are preempted by both ITSA and WTSA. Accordingly, Counts III, V, VI, VII, VIII and IX must be dismissed.

### C. Count III Fails to State a Claim for Breach of Duty of Loyalty and Honesty.

Even if plaintiff's claim for breach of duty of loyalty and honesty is not preempted by ITSA and WTSA, Count III is deficient on its face. It is clear from Count III's bare allegations that Plaintiff can allege nothing more than Pirl's purported misappropriation of OSR's trade secrets. Plaintiff attempts to avoid preemption by tacking on the additional allegation that Pirl somehow usurped OSR's corporate opportunities, but these allegations are vague, at best. Moreover, while an employee owes an employer a duty of loyalty, absent a restrictive contractual provision, an employee has a right to compete with a former employer upon leaving such employ. Composite Marine Propellers, Inc. v. Van Der Woude, 962 F.2d 1263, 1265 (7th Cir. 1992) (citing Radiac

Abrasives, Inc. v. Diamond Technology, Inc., 177 Ill. App. 3d 628, 636-37 (2d Dist. 1988); Exhibit Works, Inc. v. Inspired Exhibits, Inc., 2005 WL 3527254, at *3, No. 05 C 5090 (N.D. Ill. Dec. 21, 2005). An employee can also form a rival corporation and outfit it for business while still employed by the prospective competitor. Id. An employee only breaches his fiduciary duty when he goes "beyond such preliminary competitive activities and commences business as a rival concern while still employed in his employer's service. Composite Marine Propellers, 962 F.2d at 1265.

Here, plaintiff does not allege that Pirl was subject to any restrictive covenants governing his employment with OSR. Instead, in support of its claim for breach of the duty of loyalty and honesty, plaintiff alleges only that "Pirl violated his duty of loyalty and honesty to OSR by usurping ORS's corporate opportunities aside and apart from misappropriating OSR's trade secrets." (Complaint, ¶ 34). As supported by Composite Marine Propellers and Exhibit Works, this type of conduct is clearly not actionable, as Pirl did not promise to refrain from competition with OSR and there is no allegation that Pirl actively started competing while still employed with OSR. Without any factual allegations to support plaintiff's amorphous claim that Pirl usurped OSR's corporate opportunities, Count III must be dismissed.

**D. Count IV Fails to State a Claim for Breach of Confidentiality Agreement.**

Count IV of plaintiff's complaint fails to state a claim for breach of confidentiality agreement because the information plaintiff seeks to protect are not trade secrets. "Confidentiality agreements like the one in this case . . . are reviewed with a suspicious eye." Tax Track Sys. Corp. v. New Investor World, Inc., 478 F.3d 783, 787 (7th Cir. 2007) (noting that "[i]t is not entirely clear what exactly Tax Track is trying to protect."). As stated by the Seventh Circuit Court of Appeals, Illinois courts "will enforce such [confidentiality] agreements only when the information sought to be protected is actually confidential and reasonable efforts were made to keep it confidential." Id. (citing Curtis 1000, Inc. v. Suess, 24 F.3d 941, 947 (7th Cir.1994)).

Here, as established above, the information plaintiff seeks to protect is not a trade secret, much less confidential information. Plaintiff cannot articulate anything more than a list of general areas of information which contain unidentified trade secrets.

Nilssen, 963 F. Supp. at 672. Clearly, such information does not give rise to any confidential information or trade secrets. Composite Marine Propellers, Inc., 962 F.2d at 1266 (finding that the plaintiff must show concrete secrets.").

Additionally, the Seventh Circuit holds unenforceable nearly identical provisions (such as the instant case) in confidentiality agreements because: (1) they contain no limitation on the duration of the nondisclosure provision, instead restricting disclosure "during and subsequent to the period of said employment," and (2) they contain no geographical limitation or other kind of limit on the parties to whom the employee is prohibited from disclosing information. Amp, Inc. v. Fleischhacker, 823 F.3d 1199, 1202 (7th Cir. 1987) (citing Cincinnati Tool Steel Co. v. Breed, 136 Ill. App. 3d 267, 275-76 (2d Dist. 1985)); Disher v. Fulgoni, 124 Ill. App. 3d 257, 262 (1st Dist. 1994)). Both the Amp, Inc. court and the court in Teradyne, Inc. v. Clear Comm. Corp., 707 F. Supp. 353, 356 (N.D. Ill. 1989), noted that “the law permit[s], or perhaps encourage[s] employees to take with them general skills and knowledge acquired during [their] tenure with [their] former employer.”

As if speaking about this case, the Amp, Inc. court further emphasized:

> The right of an individual to follow and pursue the particular occupation for which he is best trained is a most fundamental right. Our society is extremely mobile and our free economy is based upon competition. One who has worked in a particular field cannot be compelled to erase from his mind all of the general skills, knowledge and expertise acquired through his experience. These skills are valuable to such employee[] in the market place for his services. Restraints cannot be lightly placed upon his right to compete in the area of his greatest worth.

823 F.3d at 1202 (quoting ILG Industries, Inc. v. Scott, 49 Ill.2d 88, 93-94 (1971). Thus, the law does not authorize relief against Pirl in this instance, as he cannot be “compelled to erase from his mind” the knowledge and expertise he acquired when working for plaintiff. “Any other result would severely impede employee mobility and undermine the competitive basis of our free economy.” Id. at 1205. Thus, Count IV must be dismissed.

### E. Count V Fails to State a Claim for Tortious Interference With the Confidentiality Agreement Against Aqua Vac.

In Count V of its complaint, plaintiff alleges in conclusory fashion that Aqua Vac, "by and through Pirl," tortiously induced Pirl to breach the Confidentiality Agreement. (Complaint, ¶ 44) As an initial matter, this count is clearly preempted by both ITSA and WTSA. Thomas & Betts Corp., 108 F. Supp. 2d at 976 (finding preemption under ITSA because misappropriation is defined to include the taking of confidential information by "inducement of a breach of a confidential relationship"). Moreover, there are simply no factual allegations to support how Aqua Vac (through Pirl) induced Pirl to breach the confidentiality agreement. This count must fail for the additional reason that "a party to a contract (i.e., Pirl) cannot be liable for tortiously interfering with that contract." Medina v. Spotnail, Inc., 591 F. Supp. 190, 197 (N.D. Ill. 1984); D.P. Service, Inc. v. A.M. Int'l., 508 F. Supp. 162, 168 (N.D. Ill. 1981) (finding that one contracting party does not have a cause of action against the other for wrongfully interfering with its own contract).

Here, plaintiff has not alleged that anyone at Aqua Vac, in addition to Pirl, the party to the Confidentiality Agreement, knew or had reason to know about the Confidentiality Agreement. Phrased differently, plaintiff wrongfully attempts to impose liability on Aqua Vac by alleging that that Pirl, as principal and founder of Aqua Vac, tortiously interfered with his own Confidentiality Agreement. Such an allegation is improper and therefore, Count V must be dismissed.

### F. Count VI Fails to State a Claim for Tortious Interference with Prospective Business Advantage.

To state a cause of action for tortious interference with prospective business advantage, a plaintiff must allege: (1) a reasonable expectancy of entering into a valid business relationship; (2) the defendant's knowledge of the expectancy; (3) purposeful or intentional interference by the defendant that prevents the plaintiff's legitimate expectancy from ripening into a valid business relationship; and (4) damage to the plaintiff resulting from the defendant's interference. Cromeens, Holloman, Sibert, Inc. v. AB Volvo, 349 F.3d 376, 398 (7th Cir. 2003).

Here, notwithstanding the fact that Plaintiff's claim is preempted by ITSA and WTSA, plaintiff's claim cannot withstand scrutiny even under this Court's notice

pleading requirements. The Supreme Court recently held that "[f]actual allegations must be enough to raise a right to relief above the speculative level" such that there is a "reasonable expectation that discovery will reveal evidence of [the claim or element]." Bell Atlantic Corp. v. Twombly, __ U.S. __ 127 S. Ct. 1955, 1965 (2007). Here, there is nothing in plaintiff's complaint suggesting that any "valid business relationship" with "prospective customers" was anything more than speculative, at best. Plaintiff has not and cannot allege any specifics regarding what defendants allegedly did to tortiously interfere with its potential business dealings with potential customers that are separate and apart from plaintiff's claims of trade secret misappropriation. Moreover, there is nothing pled to even suggest, much less establish with adequate sufficiency, that defendant knew of any expectancy. Without pleading facts to establish such knowledge, no claim can exist here. Accordingly, Count VI must be dismissed.

**G. Count VII Fails to State a Claim for An Accounting.**

As stated, Count VII of plaintiff's complaint is preempted by ITSA and WTSA because plaintiff fails to allege any facts to support a claim that rises above plaintiff's allegations of trade secret misappropriation. Moreover, even if this count were not preempted, it still fails to state a claim. To state a claim for the equitable relief of an accounting, a plaintiff must allege the absence of an adequate remedy at law. Kempner Mobile Elec. Inc. v. SW Bell Mobile Sys., 428 F.3d 706, 715 (7th Cir. 2005); Zell v. Jacoby-Bender, Inc., 542 F.2d 34, 36 (7th Cir. 1976) (finding that the necessary prerequisite to maintain a suit for an equitable accounting, like all other equitable remedies, is the absence of an adequate remedy at law). In addition to the absence of an adequate remedy at law, the plaintiff must allege at least one of the following: (1) a breach of a fiduciary relationship, (2) a need for discovery, (3) fraud, or (4) the existence of mutual accounts which are of a complex nature. Kempner, 428 F.3d at 715.

However, where the damages in a case are not speculative and the amount of damages is neither difficult nor impossible to measure, courts will not allow plaintiffs to seek an accounting. Id. In Kempner, the plaintiff never alleged that it was without an adequate remedy at law, and waited until receiving a verdict on liability to request an accounting. The court found that the case was "nothing more than a garden-variety contract dispute. Indeed, damages in this case are not speculative, and the amount of

damages is neither difficult nor impossible to measure." Id. "Furthermore, all of the accounting information pertinent to [plaintiff's] claims [could] have been revealed through discovery, and there [was] no showing that the "accounts between the parties" were of such a "complicated nature" that only a court of equity could satisfactorily unravel them." Id. (citing Zell, 542 F.2d at 36). As if commenting on this case, the Zell court noted: "legal remedies should not be characterized as inadequate merely because the measure of damages may necessitate a look into the plaintiff's business records." Zell, 542 F.2d at 36.

Here, plaintiff's complaint seeks relief for eight (8) other causes of action that clearly provides adequate legal remedies. Plaintiff cannot characterize its legal remedies as inadequate simply because its measure of damages is not a concrete number.[2] Therefore, Plaintiff's request for an accounting should be dismissed.

**H. Count VIII Fails to State a Claim for Unjust Enrichment.**

Even if plaintiff's claims were not otherwise completely preempted, Count VIII fails for the additional reason that there is an express contract (the Confidentiality Agreement) that governs the parties' relationship. Illinois law, as articulated by the Seventh Circuit, does not permit recovery on a theory of an implied contract when a real contract governs the parties' relations on that issue. Murray v. ABT Assocs., Inc., 18 F.3d 1376, 1379 (7th Cir. 1994); Bucciarelli-Tieger v. Victory Records, Inc., 488 F. Supp. 2d 702, 713 (N.D. Ill. 2007).

In Bucciarelli-Tieger, the court found that plaintiff's unjust enrichment claim failed because plaintiffs alleged a contractual agreement between the parties and then impermissibly incorporated the existence of the contractual agreement into their unjust enrichment claim. 488 F. Supp. at 713. The court noted that "[w]hile plaintiffs are entitled to plead alternative theories [of relief,] . . . it is well-settled that plaintiff's unjust enrichment claim must not include allegations of the existence of a specific contract." Id. Plaintiffs' claim failed for the additional reason that the allegations contained in their unjust enrichment action were "merely injuries plaintiffs suffered from defendants' alleged breach of its contractual obligations." Id.

[2] If plaintiff truly does not know what its estimated damages are, it raises serious questions as to the veracity of plaintiff's contention that its damages "exceed $75,000." (Complaint, ¶ 5).

This is precisely the situation before this Court. Plaintiff alleges that the Confidentiality Agreement exists, attaches it as an exhibit to its complaint, and then incorporates this document into its unjust enrichment claim. (Complaint, ¶¶ 11-12, 51, Exhibit A). Plaintiff's unjust enrichment claim, although vague, at best, is for recovery of damages related to the purported misappropriation of plaintiff's trade secrets and confidential information pursuant to the terms of the Confidentiality Agreement. Thus, in addition to preemption by ITSA and WTSA, plaintiff's unjust enrichment claim is wrapped up in the terms of the Confidentiality Agreement and plaintiff has plead itself out of court on this claim. Junction Solutions, LLC v. MBS Dev., Inc., 2007 WL 4234091, at *5 (N.D. Ill. Nov. 20, 2007).

**I. Count IX Fails to State a Claim for Conversion.**

Once again, plaintiff attempts to evade preemption by conclusorily alleging that "to the extent that any of the information alleged to be confidential by OSR is not deemed to constitute a trade secret," plaintiff is entitled to damages by virtue of defendants' conversion of its "information." (Complaint, ¶¶ 55-56). In order to state a claim for conversion, plaintiff must allege that (1) it has an absolute and unconditional right to possession of the property, (2) defendants asserted unauthorized assumption of control or ownership over the property, (3) plaintiff made a demand for the property, and (4) defendants wrongfully and without authorization assumed control, dominion, or ownership over the property. CardioNet, Inc. v. LifeWatch Corp., 2008 WL 567223, at *2 (N.D. Ill. Feb. 27, 2008).

However, plaintiff's conversion claim does not state a claim under Illinois law because Plaintiff has failed to allege the conversion of any specific chattel that can be the subject of a conversion claim. Cumis Ins. Soc'y, Inc. v. Peters, 983 F. Supp. 787, 793 (N.D. Ill. 1997). The subject of a conversion claim must be a "specific chattel" – i.e., an "identifiable object of property." Horbach v. Kaczinarek, 288 F.3d 969, 978 (7th Cir. 2002). Moreover, in In re Thebus, 108 Ill.2d 255, 260 (1985), the Illinois Supreme Court noted that "an action for conversion lies only for personal property which is tangible, or at least represented by or connected with something tangible." This was reconfirmed by the Illinois Appellate Court, First District, in Bilut v. Northwestern Univ., 296 Ill. App. 3d 42 (1st Dist. 1998), and followed by this court when plaintiffs are not completely deprived

of the ability to benefit from converted property. See Directv, Inc. v. Hinton, 2004 WL 856555, at * 4 (N.D. Ill. April 21, 2004) (Darrah, J.); see also Directv, Inc. v. Frey, 2004 WL 813539, at *4 (N.D. Ill. April 14, 2004) (Zagel, J.); Directv, Inc. v. Maraffmo, 2004 WL 170306, at *4 (N.D. Ill. Jan. 23, 2004) (Lefkow, J.); Directv, Inc. v. Castillo, 2004 WL 783066, at *2 (N.D. Ill. Jan. 2, 2004) (St. Eve, J.); Directv, Inc. v. Patel, 2003 WL 22682443, at *3 (N.D. Ill. Nov. 12, 2003) (Coar, J.).

Here, even if plaintiff's claim for conversion is not preempted by ITSA and WTSA, plaintiff was not deprived of the benefit of its purported confidential information that was allegedly converted by defendants. Accordingly, Count IX must be dismissed.

**Conclusion**

It is clear from the repetitive allegations contained in plaintiff's complaint that it attempts to state a cause of action under the Illinois and Wisconsin Trade Secret Acts under six (6) different common law theories of relief. However, such common law causes of action are preempted by both Acts and should be dismissed. Moreover, and in any event, plaintiff cannot state claims under ITSA, WTSA, or for breach of the Confidentiality Agreement because the information plaintiff seeks to protect is not confidential, much less a trade secret. Accordingly, plaintiffs' complaint must be dismissed with prejudice.

Respectfully submitted,

BRIAN PIRL and MIDWEST CAPS & ACCESSORIES, INC., d/b/a US AQUA VAC, INC.

By: /sJenifer H. Caracciolo
One of their attorneys

David S. Wayne (ARDC #6238327)
Hal R. Morris (ARDC #6191047)
Jenifer H. Caracciolo (ARDC #6280221)
Arnstein & Lehr, LLP (*of counsel*)
120 S. Riverside Plaza
Suite 1200
Chicago, IL 60606
(312) 876-7100

**CERTIFICATE OF SERVICE**

The undersigned, an attorney, certifies that on May 1, 2008, s/he electronically filed Defendants' Motion to Dismiss with the clerk of the United States District Court for the Northern District of Illinois using the CM/ECF electronic filing system, which electronically served notification and a copy of such filing to:

Lisa D Johnson lisa.johnson@hklaw.com

Robert H. Lang rhlang@hklaw.com

Trisha Michelle Rich trisha.rich@hklaw.com

/sJenifer H. Caracciolo