IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ORGANIC SEDIMENT REMOVAL SYSTEMS, LIMITED LIABILITY COMPANY, a Wisconsin Limited Liability Company, <br><br> Plaintiff, <br><br> v. <br><br> BRIAN PIRL and MIDWEST CAPS & ACCESSORIES, INC., d/b/a U.S. AQUA VAC INC., an Illinois corporation, <br><br> Defendants. | No. 08 C 976 <br><br> Judge Aspen <br><br> Magistrate Judge Nolan |

**PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS COMPLAINT**

Plaintiff, Organic Sediment Removal Systems, Limited Liability Company, a Wisconsin Limited Liability Company ("OSR"), by and through its undersigned counsel, for its Response to the Rule 12(b)(6) Motion to Dismiss of the Defendants, Brian Pirl ("Pirl") and Midwest Caps & Accessories, Inc., d/b/a U.S. Aqua Vac Inc., an Illinois corporation ("US"), states:

**INTRODUCTION**

Defendants move to dismiss <u>all nine</u> counts of OSR's Complaint which are:

I-Violation of Illinois Trade Secrets Act ("ITSA") against both Defendants.

II-Violation of Wisconsin Uniform Trade Secrets Act ("UTSA") against both Defendants.

III-Breach of Duty of Loyalty and Honest against Pirl.

IV-Breach of Confidentiality Agreement against Pirl.

V-Tortious Interference with Confidentiality Agreement against US.

VI-Tortious Interference with Prospective Business Advantage against both Defendants.

VII-Equitable Accounting against both Defendants.

VIII-Unjust enrichment against both Defendants.

IX-Conversion against both Defendants.

The Defendants' arguments can be summarized as follows. As to OSR's trade secrets counts (I and II), the Defendants, based on Illinois' inapplicable fact-pleading standards, improperly assert that OSR's Complaint fails to state <u>any</u> claims. Defendants also improperly go well beyond the "four corners" of OSR's Complaint in attacking these counts. Counts I and II are sufficient pursuant to Fed. R. Civ. P. 12(b)(6) and this Court's <u>notice</u> pleading standards.

Defendants also assert that Counts III and V through IX of the Complaint are preempted by OSR's statutory trade secrets claims set forth in Counts I and II. OSR, however, alleges these counts based on the Defendants' breaches of legal duties that arose outside of OSR's trade secrets claims.

Finally, similar to their attacks of Counts I and II, Defendants attempt to improperly apply fact-pleading standards to assert that Counts III through IX of the Complaint are insufficiently pleaded pursuant to Rule 12(b)(6).

## **THE ALLEGATIONS OF THE COMPLAINT**

The Defendants only allocate two paragraphs of their fifteen page Motion to setting forth the actual allegations of OSR's fifteen page Complaint (and then interjecting argument into their "recitation" of the Complaint's allegations). (Motion at 1-2). The Defendants obviously glossed over the allegations of the Complaint that they are attacking and therefore OSR will summarize the allegations of the Complaint here. The following allegations are alleged as to all times pertinent to OSR's claims against the Defendants.

OSR is in the business of cleaning and removing sediment from ponds and other waterways, such as those found on golf courses. (Complaint at ¶6). The home page for OSR's

2

Internet website is www.pondclean.com. (*Id.*). Traditionally, such services have been performed through more cumbersome and messier methods such as draining the pond or waterway or using a barge to remove the sediment and "muck" that can be found on the bottom of ponds and other bodies of water. (*Id.*). OSR, through the use of its specialized methods, technologies and processes has been able to drastically improve such services to customers. (*Id.*). OSR employs "divers" to do so. (*Id.* at ¶7). More specifically, the OSR Trade Secrets include, but are not limited to, the assembly of the OSR Apparatus; the development of the OSR Apparatus; the function of the various components of the OSR Apparatus; techniques in using the OSR Apparatus and to otherwise perform sediment removal; pricing information; and potential customer contacts. *(Id.* at ¶14).

OSR uses an apparatus which allows two divers to perform sediment removal simultaneously (the "OSR Apparatus"), which greatly streamlines the process. (*Id.* at ¶7). OSR also utilizes specialized methodologies and processes to perform sediment removal. (*Id.* at ¶6). OSR has developed the OSR Apparatus and its specialized methodologies and processes (the "OSR Trade Secrets") over the course of approximately seventeen years. (*Id.* at ¶7). OSR protects the secrecy of the OSR Trade Secrets through the following measures:

    A.    By not publicly advertising the OSR Trade Secrets. For example, OSR's Internet website and other advertising materials do not depict the OSR Trade Secrets in any way.

    B.    By requiring its divers to execute Confidentiality and Non-Disclosure Agreements.

    C.    By not allowing all customer contact information to be freely disseminated to OSR divers.

   D.  By attempting to restrict pricing information to OSR executive staff and sales staff (excluding divers) who need to know such information. OSR does not advertise its pricing information or variables that affect pricing.

(*Id.* at ¶15). OSR has started to franchise its business at a cost of $100,000 per franchise, thereby deriving economic value from the OSR Trade Secrets. *(Id.* at ¶16).

OSR hired Pirl as a diver on May 8, 2006, and Pirl executed a "Confidentiality and Non-Disclosure Agreement" with OSR dated May 8, 2006 (the "Confidentiality Agreement"). (*Id.* at ¶¶8, 11). Pursuant to the Confidentiality Agreement, both during his employment and thereafter, Pirl agreed not to reproduce, divulge, publish, communicate, use or utilize information defined therein as "Business Trade Secrets" or "Confidential Information" without OSR's express written consent. (*Id.* at ¶12 and Ex. "A" thereto). Pirl also agreed to return all such information to OSR within fifteen days of OSR's demand for the return thereof. (*Id.*). "Business Trade Secrets" are defined under the Confidentiality Agreement to include "all information relating to business programs, products, applications, systems, technologies and business procedures" and this definition specifically refers to the OSR Trade Secrets. (*Id.* at Ex. "A"). "Confidential Information" is defined to include all OSR information relating to OSR's Business Trade Secrets not in the public domain. (*Id.*).

In October, 2006, Pirl resigned from OSR a mere five months or so after he joined OSR. (*Id.* at ¶8). At that time, Pirl joined (or re-joined) US[1], a company he formed on May 24, 2005. (*Id.* at ¶13). US' Internet website, www.usaquavac.com, indicates that US is now in the same

---

[1] According to the Illinois Secretary of State website, Midwest Caps & Accessories, Inc. was formed on May 24, 2005, but Pirl applied for "US Aqua Vac Inc." d/b/a on **August 24, 2006, <u>before</u> Pirl resigned from US.** *See*, Ex. "A," Certified copy of Application for this assumed name made on August 24, 2006. Although this fact is not alleged in OSR's Complaint, OSR submits that the Court can take judicial notice of this fact.

4

business as OSR, though it was not in OSR's same business prior to OSR's employment of Pirl. (*Id.* at ¶13). US, in other words, did not start to compete with OSR until after Pirl worked for OSR. (*Id.* at ¶17). Pirl, however, prior to working at OSR, had no meaningful job experience in the areas of OSR's business prior to his employment by OSR. (*Id.* at ¶10). In fact, prior to joining OSR, upon information and belief, Pirl worked in shipping and receiving and other areas totally unrelated to OSR's and US' business. (*Id.* at ¶17).

Therefore, prior to joining OSR, Pirl did not have the technical expertise to even attempt to compete with OSR. (*Id.*). After his affiliation with OSR, however, Pirl acquired such technical expertise through his misappropriation of OSR's Trade Secrets, breaches of the Confidentiality Agreement and breaches of his other legal duties to OSR. (*Id.*). OSR has demanded that Defendants return the OSR Trade Secrets on at least two occasions and Pirl on both occasions has failed to accede to such demands. (*Id.* at ¶18).

## ARGUMENT

**A.     Counts I and II Sufficiently Plead Statutory Trade Secrets Claims**

**1.     Trade Secrets Claims Inherently Raise Questions of Fact**

OSR will not repeat the well-known standards of Rule 12(b)(6) in this Response. Defendants acknowledge that the notice pleading standard applies (Motion at 2), but then proceed to argue that Counts I and II should be dismissed essentially under a fact pleading standard. Counts I and II, however, easily meet the applicable notice pleading standard. Overall, the Defendants misconstrue the federal notice pleading standard, which requires a plaintiff, absent Fed. R. Civ. P. 9(b) obligations, to plead claims, not facts. *See e.g., Fast Food Gourmet, Inc. v. Little Lady Foods, Inc.*, 2007 WL 1175577 (N.D. Ill. 2007) (construing Illinois law) ("Plaintiff clearly names the parties, provides a narrative of the events and the nature of its

5

grievance, and provides relevant dates and locations that make investigations possible") (rejecting arguments similar to those made by Defendants here as to trade secrets claims). *See also, Lawson Products, Inc. v. Chromate Indus. Corp.*, 158 F. Supp. 2d 860, 864 (N.D. Ill. 2001) (construing Illinois law, and denying a trade secrets defendant's Rule 12(b)(6) motion to dismiss and rejecting arguments similar to those made by the Defendants here: "The complaint is not particularly specific in describing the allegedly appropriated information, but under federal pleading standards it does not have to be.")

"To prevail on a claim for misappropriation of a trade secret under the Act [ITSA], the plaintiff must demonstrate that the information at issue was a trade secret, that it was misappropriated and that it was used in defendant's business." *Learning Curve Toys, Inc. v. Playwood Toys, Inc.*, 342 F3d 714, 721 (7th Cir. 2003) (construing Illinois law) (cited by Defendants at pp. 3-5 of their Motion). The Defendants prominently rely on *Learning Curve*, and that case is quite instructive on the pleading burden of statutory trade secrets claims.

For example, the Defendants cite the six Restatement factors (the "Six Factors") in their Motion (p. 3), but *Learning Curve* downplayed the necessity of the Six Factors to a trade secrets claim:

> . . . The language of the Act makes no reference to these factors as independent requirements for trade secret status, and Illinois case law imposes no . . . requirement that each factor weigh in favor of the plaintiff. *See ILG Indus., Inc. v. Scott*, 49 Ill. 2d 88, 273 N.E. 2d 393, 396 (1971) ("An exact definition of a trade secret, applicable to all situations, is not possible . . . .") . . . . Courts from other jurisdictions, as well as legal scholars, have noted that the Restatement factors are not to be applied as a list of requisite elements.

6

*Id.* at 722.

Therefore, the *Learning Curve* court made it clear that "[t]he existence of a trade secret is **ordinarily a question of fact.**" *Id.* at 723 ("As aptly observed by our colleagues on the Fifth Circuit, a trade secret "is one of the most elusive and difficult concepts in the law to define." (citation omitted)) (emphasis added). "In many cases, the existence of a trade secret is not obvious; it requires an ad hoc evaluation of all of the surrounding circumstances. For this reason, the question of whether certain information constitutes a trade secret is best "resolved by a fact finder **after full presentation of evidence** from each side." *Id.* (citation omitted) (emphasis added).

In *Learning Curve*, the court also noted that "Illinois courts have consistently recognized on several occasions that the expectations for ensuring secrecy are different for small companies than for large companies." *Id.* at 724. Here, the Defendants cite *Learning Curve* for the proposition that OSR has not pleaded its statutory trade secrets claims, but it should be noted that the Seventh Circuit in that case **reversed** the trial court after it granted a post-trial motion for judgment in favor of the party misappropriating the alleged trade secrets; instead upholding the jury's verdict for the party whose trade secrets were allegedly misappropriated. Therefore, the rules, holding and procedural posture of *Learning Curve* illustrate why Counts I and II should be **sustained.** *See also, Fast Food Gourmet, Inc. v. Little Lady Foods, Inc.* 2008 WL 918431, *1 (N.D. Ill. 2008) (also cited by Defendants here, but finding there to be a question of fact as to the defendants' motion for summary judgment).

Accordingly, trade secrets have been found to include various types of information, including but not limited to, (1) cost and pricing figures and comparable rates *(See e.g., Strata Marketing, Inc. v. Murphy*, 317 Ill. App. 3d 1054, 1069 (1st Dist. 2000)); information regarding

7

the efforts undertaken to compile useful information even if that information is generally known (*ISC-Bunker Ramo Corp. v. Altech, Inc.*, 765 F. Supp. 1310, 1322 (N.D. Ill 1990) (construing Illinois law)); names, addresses and telephone numbers of customers; details of pending price quotations; details of contacts with customers or contacts; sales data; information about persons with influence over purchasing information; profit margin; supplier terms; and, strategic plans. *RKI, Inc. v. Grimes,* 177 F. Supp. 2d 859 (N.D. Ill. 2001) (construing Illinois law). Examples of legally sufficient measures to guard the secrecy of alleged trade secrecy include requiring employees or contractors to execute confidentiality agreements (*Strata Marketing*, 317 Ill. App. 3d at 1069) or restricting disclosure of information to those who need to know. *RKI*, 177 F. Supp. 2d at 874.

Plaintiff need not allege outright theft of trade secrets to allege the misappropriation element. For example, a plaintiff may prove misappropriation by inevitable disclosure if the defendant could not function as a competitor without relying on the former employer's trade secrets. *Strata Marketing*, 317 Ill. App. 3d at 1071. Also, "misappropriation" can occur through the defendants' purported modification or improvement of an alleged trade secret. *See, e.g., Mangren Research & Dev. Corp. v. Nat'l Chem. Co.*, 87 F. 3d 937, 944 (7th Cir. 1996) (citing *In re: Innovative Constr. Sys. Inc.*, 793 F.2d 875, 887 (7th Cir. 1986) (construing Wisconsin law[2]). Further, evidence showing that before viewing the alleged confidential information the defendant did not have the ability to practice in the pertinent area or industry but could do so after viewing the information circumstantially demonstrates the misappropriation of a trade secret. *Roton Barrier, Inc. v. The Stanley Works,* 79 F.3d 1112 (Fed. Cir. 1996) (construing Illinois law). Indeed, "[b]ecause direct evidence of theft and use of trade secrets is often not available, the

---

[2] Illinois' and Wisconsin's trade secrets statutes appear to closely follow each other and therefore OSR will not cite all Wisconsin cases which correspond to the Illinois cases.

8

plaintiff can rely on circumstantial evidence to prove misappropriation by drawing inferences from perhaps ambiguous circumstantial evidence." *RKI*, 177 F.Supp. 2d at 876.

2.   **Counts I And II Are Sufficiently Pleaded**

OSR alleges that the Defendants have misappropriated their trade secrets and that Defendants have used the same in their business. (Complaint, ¶¶ 14, 16, 17 and 21). OSR identifies the OSR Trade Secrets at ¶ 14. Further, the Complaint makes allegations in regards to the Six Factors. (*Id.* at ¶¶ 11, 15 and 16, including, without limitation the clear allegation that OSR derives economic value from the OSR trade secrets from **franchising** its business). Counts I and II meet the notice pleading standards. Defendants, without asserting any statute of limitations, also make the spurious argument that the **date** that OSR filed its lawsuit renders Counts I and II to be "deficient as a matter of law." (Motion at 5). This argument shows the weakness of Defendants' Motion as it does not go to the sufficiency of the Complaint's allegations.

B.   **Counts III And V Through IX Are Not Preempted**

The Defendants assert that Counts III and V through IX ("Non-Trade Secret Counts") cannot lay alongside Counts I and II since the information at issue in the Non-Trade Secrets counts are centered on Defendants' misappropriation of trade secrets. (Motion at 6). The Non-Trade Secrets Counts, however, are not preempted because they do not center on the misappropriation of a trade secret and therefore are permissible pursuant to both the Illinois and Wisconsin trade secrets statutes. 765 ILCS 1065/8(b)(2) (West, 2008) and W.S.A. 134.90(6)(b)(2) (West, 2008).

Defendants assert that "courts in this district routinely dismiss each of the above claims as preempted by an ITSA claim." (Motion at 7). The truth, however, is that there are examples

9

of courts going both ways, which makes sense since the trade secrets inquiry is so fact specific and "case-by-case." For example, in *RKI, Inc. v. Grimes*, 177 F. Supp. 2d 859, 880-81 (N.D.Ill. 2001), the Court not only entered a judgment in favor of an employer against its former employee and that employee's new employer under the ITSA but also pursuant to the plaintiff employer's "alternative" claims for conversion, breach of duty of loyalty, breach of contract and tortious interference with contract. *See also, Hecny Transport., Inc. v. Chu*, 430 F.3d 402, 404-405 (7th Cir. 2005) (cited by the Defendants here, construing Illinois law and ruling that "[t]he dominant view is that claims are foreclosed only when they rest on the conduct that is said to misappropriate trade secrets."). The *Hecny* Court also made the astute observation that Illinois courts have not had much to say about preemption "because it is unimaginable that someone who steals property, business opportunities, and the labor of the firm's staff would get a free pass just because none of what he filched is a trade secret." *Id.* at 404.

Similarly, in *Cardionet, Inc. v. Lifewatch Corp.*, 2008 WL 567223 (N.D. Ill. 2008) (construing Illinois law), another case cited by the Defendants, the court ruled that ". . . ITSA preemption 'does not apply to **duties** imposed by law that are not dependent upon the existence of competitively significant secret information.'" *Id.* at *4 (emphasis added). For example, the theft of data may not constitute a violation of the ITSA if the data is not a "trade secret," but a defendant may violate other legal duties by converting that data.

Count III is a claim for breach of duty and loyalty and honesty against Pirl, and alleges as follows: "[r]egardless of Pirl's misappropriations of the OSR Trade Secrets, Pirl violated his duty of loyalty and honesty to OSR by usurping OSR's corporate opportunities . . . ." (Complaint at ¶34). Therefore, under notice pleading standards, Count III can lay alongside Counts I and II as it centers on Pirl's breach of his duty of loyalty and honesty to OSR by

usurping OSR's corporate opportunities, and lies even if Pirl is not alleged to have misappropriated any trade secrets. The usurped corporate opportunities are alleged, *inter alia*, in ¶¶ 16 and 17 of the Complaint (and as further confirmed by Pirl establishing US while employed by OSR).

The Defendants do not argue that Count IV (breach of contract against Pirl) is preempted, because both the Illinois and Wisconsin trade secrets statutes specifically exempt such claims. *See,* 765 ILCS 1065/8(b)(1) (West, 2008) and W.S.A. 134.90(6)(b)(1) (West, 2008). Since the breach of contract claim is not preempted, it should follow that Count V of OSR's Complaint, for US' tortious interference with that same contract, is not preempted. Regardless, Count V is not dependent on allegations of misappropriation of trade secrets, instead it is dependent on the allegation that US interfered with a contract between Pirl and OSR. Likewise, the *Cardionet* court refused to grant the defendant's Rule 12(b)(6) Motion to Dismiss plaintiff's tortious interference with contract claim because "[t]he tort alleged here is not the misappropriation of a trade secret, but rather the interference with . . . [the] underlying contract." 2008 WL 567223 at *5.

Somewhat similarly, Count VI against both Defendants is based on their interference with OSR's prospective business relationships and reasonable expectations, again, this interference can be tortious regardless of whether the Defendants misappropriated a trade secret. The Complaint also alleges that Pirl was essentially establishing a competing business while he was working for OSR. (Complaint at ¶¶13 and 17). If true, these allegations will support all of the Non-Trade Secret Counts and further establish that they are not based on the Defendants' misappropriation of trade secrets. Count VII is an action for an equitable accounting against the Defendants and is based on Pirl's breach of his duty of loyalty and the "need for discovery,"

11

which is a valid basis to order an equitable accounting pursuant to Illinois law. (Motion at 12). Again, Count VII is not centered on the Defendants' misappropriation of a trade secret.

Count VIII is for unjust enrichment, and the Defendants can be found to have been unjustly enriched by OSR even without misappropriating OSR's trade secrets. For example, even if the information procured by Pirl while employed by OSR is found by the finder of fact to not to consist of trade secrets, it can still be said that he has been unjustly enriched by using that information to further US' business. *See e.g., Fast Food Gourmet, Inc. v. Little Lady Foods, Inc.*, 2006 WL 1460461, *2 (N.D. Ill. 2006). Count IX is for conversion, and specifically alleges: "to the extent that any of the information alleged to be confidential by OSR is not deemed constitute a trade secret . . . ." (Complaint ¶55).[3]

### C.   Counts III Through IX Are Sufficiently Pleaded

Defendants assert that OSR has failed to allege its claim against Pirl for breaching his duty of loyalty and honesty to OSR (Count III), basically by repeating the oft-cited principle that an employee has certain rights to compete with his former employer. (Motion at 8-9). This, however, is not really a Rule 12(b)(6) argument as Defendants do not assert that Count III fails to meet notice pleading standards, nor could they. (*See* Complaint at ¶¶ 33-34). Defendants' assertions raise questions of fact such as what Pirl did to start his competing business and when. The Complaint alleges that Pirl formed US, the business which he now uses to compete with OSR, on May 24, 2005, **before** Pirl started working for US. (*Id.* at ¶¶ 8, 13).

Defendants' argument(s) as to Count IV are somewhat unclear to OSR, as the Defendants cite many of the concepts and cases that one would expect to see upon responding to a motion for preliminary injunction. (Motion at 9-10). Once again, however, Defendants' arguments are

---

[3] Defendants assert that the Non-Trade Secrets Counts "adopt and reincorporate" allegations relating to the misappropriation of trade secrets. (Motion at 7). But this does not render the Non-Trade Secrets Counts to be "based upon misappropriation of a trade secret."

off-base under Rule 12(b)(6). Count IV attaches and incorporates the Confidentiality Agreement and alleges that Pirl breached it. It appears that the Defendants attempt to argue that the Confidentiality Agreement is overbroad based on alleged durational and geographic scope issues, but the Defendants ignore Section 8(b)(1) of the ITSA which states in part "that a contractual or other duty to maintain secrecy or limit use of a trade secret shall not be deemed to be void or unenforceable solely for lack of durational or geographical limitation on the duty." 765 ILCS 1065(8)(b)(1) (West, 2008).

Defendants miss the point as to Count V of the Complaint as their argument relies on the falsity that OSR has brought its tortious interference with contract claim against **Pirl**. (Motion at 11). US, at least as currently alleged by OSR, is a separate legal entity aside and apart from Pirl. Therefore, US is a third party to the Confidentiality Agreement between Pirl and OSR. Otherwise, based on Defendants' view, OSR could properly bring its claim for breach of the Confidentiality Agreement against **US**, who did not execute that agreement.

Defendants attack Count VI for tortious interference with prospective business advantage by asserting that OSR's allegations as to future business relationships are "speculative." (Motion at 12). Once again, this argument is irrelevant to the question of whether Count VI is sufficient pursuant to notice pleading standards.

Defendants assert that Count VII of OSR's Complaint (for an equitable accounting) must be dismissed because OSR failed to allege the absence of an adequate remedy at law. (*Id.*). Defendants must have misread Count VII, since it does allege that ". . . OSR has no adequate remedy at law . . . ." (Complaint, ¶ 50). The *Kempner* case cited by the Defendants is distinguishable, as in that case, the plaintiff never even alleged an accounting claim, it merely

13

requested one after obtaining a verdict on liability. *Kempner Mobile Elec. v. SW Bell Mobile Sys.*, 428 F. 3d 706, 715 (7th Cir. 2005).

Defendants assert that Count VIII for unjust enrichment must fail because there is a contract that governs the relationship of the Parties. (Motion at 13). However, as stated, **US is not a party to the Confidentiality Agreement**, and the Complaint alleges no other agreements. Accordingly, Defendants' argument as to US does not make sense. As to Pirl, OSR's unjust enrichment claim can lay to the extent that the finder of fact ultimately finds the Confidentiality Agreement to be unenforceable, and therefore pleading in the alternative is proper at this point. Count VIII is pleaded in the alternative.

Defendants' argument as to Count IX for conversion is also somewhat unclear to OSR, but OSR interprets the argument to be that OSR has not specifically alleged what was converted. OSR, however, alleges information converted by Pirl, especially under notice pleading standards. (Complaint, ¶¶ 14, 16).

## CONCLUSION

OSR requests that the Court deny the Defendants' Motion, with prejudice, and that the Court further order the Defendants to promptly answer any and all sustained counts of the Complaint within twenty days of the requested Order, and that the Court enter any such other and further relief deemed just by the Court, including, but not limited to, granting Leave to OSR to amend any Counts of the Complaint dismissed by the Court.

Respectfully submitted,

ORGANIC SEDIMENT REMOVAL SYSTEMS
LIMITED LIABILITY COMPANY,


/s/ Robert H. Lang
One of its attorneys

Robert H. Lang (ARDC #6225414)
Lisa D. Johnson (ARDC #6280293)
Holland & Knight LLP
131 South Dearborn Street
30th Floor
Chicago, IL 60603
(312) 263-3600

# 5326256_v1