**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| ORGANIC SEDIMENT REMOVAL SYSTEMS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 1:08-cv-00976 |
| v. | ) | |
| | ) | Hon. Marvin E. Aspen |
| BRIAN PIRL and MIDWEST CAPS & ACCESSORIES, | ) | |
| INC. d/b/a U S AQUA VAC INC., | ) | **JURY DEMANDED** |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION**

Plaintiff, ("OSR"), by its undersigned counsel, seeks to enjoin both Defendants ("Pirl" and "US") from continuing to unlawfully misappropriate and use OSR's trade secrets and otherwise violating their legal duties to OSR. OSR will establish that Pirl worked for OSR just long enough to learn and steal its trade secrets. Pirl and his company, US, are now using the trade secrets that they stole from OSR to steal business from OSR. OSR has been able to confirm this through indisputable photographic evidence obtained in May and June, 2008.

OSR seeks a preliminary injunction that (1) prohibits Pirl and US from disclosing and/or using OSR's trade secrets, (2) compels Pirl and US to return OSR's trade secrets and confidential information to OSR, and (3) enjoins Pirl and US from competing with OSR since the Defendants' entire business has been founded on the misappropriation of OSR's trade secrets.

## I. BACKGROUND FACTS

### A. An Introduction To OSR And The Alleged Trade Secrets

Since 1989, OSR has been in the business of cleaning the bottoms of ponds and other waterways, such as those found on golf courses. *See* Kohutko Declaration, ¶3. The primary tools of OSR in performing its services are an apparatus that OSR has created and innovated

through its years of experience (the "OSR Apparatus") and the specialized methodologies, procedures and processes that OSR uses to perform its services (the "Processes"), both through the use of the OSR Apparatus and otherwise. *Id.* In fact, by May, 2006, OSR had reduced its Processes to writing, in the form of what has become a "procedures manual" that OSR characterizes as its "bible" (the "Manual"). *See* Manual incorporated in and attached to Shaffer Declaration, ¶3 and Attachment 1. Photographs depicting the OSR Apparatus and the Manual are incorporated in and/or attached to Shafer and Abramson certifications, filed contemporaneously herewith. *See* Shaffer Declaration, ¶9 and Attachments 1(a) and 3; Abramson Declaration, ¶¶3-5 and Attachments 1 and 2.

While the cleaning of "muck" from the bottom of a pond may on first blush sound like it does not involve "rocket science," OSR has in fact made the performance of its services a science. In fact, OSR's "know-how" is so valuable that OSR has been able to sell its know-how to others in the industry in the form of distributorships (through its business partner Sediment Removal Solutions, Inc., or "SRS"). Kohutko Declaration, ¶¶6-7. Accordingly, the trade secrets that OSR seeks to protect in this lawsuit (the "Trade Secrets") are as follows: (1) the assembly of the OSR Apparatus; (2) how the various components of the OSR Apparatus function and interact; (3) techniques in using the OSR Apparatus; (4) pricing and competitive bidding information; (5) potential customer contacts and the process of researching and finding targets and leads; and, (6) Processes outside of the assembly and use of the OSR Apparatus, as set forth in the Manual.

OSR protects the secrecy of its Trade Secrets through the following measures:

a. OSR does not publicly advertise the OSR Apparatus or Processes. For example, OSR's Internet website as well as its other advertising materials does not depict the entire OSR Apparatus through a photograph, diagram or other visual aid;

b. OSR and SRS have required their divers, including Pirl, and potential and actual distributors to execute Confidentiality and Non-Disclosure Agreements to protect OSR trade secrets;

c. OSR's executive staff has not allowed customer contact information to be freely disseminated to OSR representatives such as its divers; and,

d. OSR's executive staff attempts to restrict information regarding OSR's pricing to OSR's executive and sales staff (excluding divers) who needs to know such information. For example, OSR does not advertise its pricing information or variables that affect pricing.

*Id.* at ¶ 8.

**B. Pirl And US**

OSR hired Pirl, now a former employee of OSR, as a diver on or about May 8, 2006. Pirl executed a "Confidentiality and Non-Disclosure Agreement" (the "Confidentiality Agreement") dated that same day. *Id.* at ¶ 9. Pursuant to the Confidentiality Agreement, both during his employment and thereafter, Pirl agreed not to reproduce, divulge, publish, communicate, use or utilize without OSR's express written consent information defined therein as "Business Trade Secrets" or "Confidential Information." *Id.* Pursuant to the Confidentiality Agreement, Pirl also agreed to return all Confidential Information (including Business Trade Secrets) within fifteen days of OSR's demand for the return thereof. *Id.* "Business Trade Secrets" are defined as "all information relating to business programs, products, applications, systems, technologies and business procedures." *Id.* "Confidential Information" is defined as all OSR information relating to OSR's Business Trade Secrets belonging to OSR and not in the public domain. *Id.*

On September 12, 2006, Pirl quit his job at OSR a mere four months after starting his job at OSR. *Id.* at ¶10. However, this proved long enough for Pirl to learn and misappropriate OSR's Trade Secrets so he could set up a competing business and use OSR's own Trade Secrets against OSR. As an OSR diver, Pirl was trained in OSR's Trade Secrets, such as how to use the OSR Apparatus and how to implement and follow the Processes espoused in the Manual. *Id.* Further,

Pirl during at least one OSR work trip to Appleton, Wisconsin in August, 2006 had access to drafts of the Manual itself and likely misappropriated information relating to the Processes. *Id.*

Pirl formed "Midwest Caps & Accessories, Inc." as an Illinois corporation on May 24, 2005, well before he joined OSR. *Id.* at ¶11. As one can determine from the name of this entity, it obviously was not in the same business as OSR at that time. But, as recently discovered by OSR, **on August 24, 2006**, **<u>before</u>** he resigned from OSR, Pirl applied for a d/b/a for the "Midwest Caps" entity, "U S Aqua Vac Inc." Pirl now does business under "U S Aqua Vac Inc.," and, photos of the OSR Apparatus and the device used by Pirl, will show that Pirl's "Aqua Vac" is a copy of OSR's device. *See* Exs. 1-3 to Abramson Declaration and Ex. 3 to Shafer's.

Since August/September, 2006, Pirl has done business under the name U S Aqua Vac and has directly competed, or attempted to compete with OSR (and investigation continues as to whether Pirl was directly competing while employed by OSR). *Id.* at ¶13. US' Internet website, www.usaquavac.com, indicates that US is now in the same business as OSR, though it was not in OSR's same business prior to OSR's employment of Pirl. *Id.* As stated, US did not conduct any business in the area of OSR's business until after Pirl became employed with OSR *Id.* at ¶14. Likewise, at the time he was hired by OSR, Pirl did not have any meaningful experience in the area of business conducted by OSR and did not have the technical expertise or skill to compete against OSR. *Id.* US, doing business as "U S Aqua Vac, Inc.," is currently competing aggressively with OSR and threatens to deprive OSR of the value of its Trade Secrets. *Id.*

Starting at the time of his departure from OSR in September, 2006, and perhaps even earlier, Pirl breached his Confidentiality Agreement with OSR in the following ways:

a. By using a device similar to the OSR Apparatus in US' business operations. Upon information and belief, Pirl, while employed at OSR, illicitly took photographs of the OSR Apparatus to enable him to attempt to replicate the OSR Apparatus for use in US' business operations;

b. By using Processes that he learned while employed at OSR in US' business operations;

c. By using knowledge of OSR's pricing information illicitly obtained while employed by OSR to undercut OSR in bidding and to otherwise gain an improper competitive advantage;

d. By using knowledge of OSR's customer contact information illicitly obtained while employed by OSR to contact potential OSR customers on behalf of US;

e. By publishing marketing materials which are substantially similar to aspects of OSR's marketing materials;

f. By publishing OSR's confidential information to the public-at-large, including, but not limited to, in a magazine article; and,

g. By otherwise misappropriating OSR Trade Secrets in US' business operations.

*Id.* at ¶15; Shaffer Declaration, ¶9; Abramson Declaration, ¶¶3-5. OSR has made written demand for the return of trade secrets taken and misappropriated by Pirl on at least two (2) separate occasions. *Id.* Pirl has failed to accede to such demands. Pirl and US further continue to use OSR's trade secrets in US' business as "US Aqua Vac, Inc." *Id.* at ¶ 16**.**

OSR filed its Complaint on February 15, 2008, prior to the commencement of the Spring, Summer and Fall Seasons where OSR (and presumably US) do most of their business. Once the Spring season was in full swing, OSR retained a private investigator to confirm the various allegations of OSR's Complaint and to provide documentary evidence thereof, and OSR has promptly brought this Motion after a full analysis of such evidence. OSR's Complaint has nine counts, the following of which are of most relevance to this motion: Counts I (violation of the ITSA against both Defendants); II (violation of Wisconsin's counterpart to the ITSA, "WTSA," which is substantially similar, against both Defendants); III (breach of duty of loyalty and honesty against Pirl only); IV (breach of Confidentiality Agreement against Pirl only); V (tortious interference with Confidentiality Agreement against US only) and VI (tortious

interference with future business advantage against both Defendants). OSR's Complaint is currently subject to a fully-briefed Motion to Dismiss all counts filed by the Defendants, with a currently-scheduled ruling date of August 14, 2008.

## II. THE STANDARDS FOR ISSUING A PRELIMINARY INJUNCTION

The elements of preliminary injunctive relief are: (i) that movant has an ascertainable right in need of protection; (ii) that the movant will suffer immediate and irreparable harm absent the preliminary injunction; (iii) that the harm the movant will suffer absent injunctive relief is greater than the harm the defendants will suffer as a result of the injunctive relief; (iv) movant's reasonable likelihood of success on the merits; and (v) that the injunction will not harm the public interest. *S.E.C. v. Cherif*, 933 F.2d 403, 407-08 (7th Cir. 1991). In order for a party seeking a preliminary injunction to establish that it has a protectable right, it need only show that it has some likelihood of succeeding on the merits regarding the existence of its right. *PepsiCo v. Redmond*, 1996 WL 3965 at *31 (N.D. Ill. 1996). Indeed, the Court, in entertaining a motion for a preliminary injunction, can consider inadmissible hearsay in determining whether the movant is entitled to such relief. *S.E.C. v. Cherif, supra*, 933 F.2d at 412; *Zemaitis v. DuPage County Board of Election Commissioners*, 1988 WL 89954 (N.D. Ill. 1988); *Asseo v. Pan American Grain Co.*, 805 F.2d 23, 26 (1st Cir. 1986).

## III. OSR Rights To Protect Its Trade Secrets Are In Need Of This Court's Protection.

### A. The ITSA

To raise a fair question of misappropriation of a trade secret under the ITSA, OSR must show two things: (i) the existence of a "trade secret;" and (ii) "misappropriation" of that trade secret. The Declarations filed herewith establish both elements.

**1. OSR's Trade Secrets Constitute "Trade Secrets" Pursuant To The ITSA**

Again, the information claimed by OSR to constitute the Trade Secrets relates to the development and assembly of the OSR Apparatus; techniques in using that apparatus; Processes used by OSR outside of the assembly and use of the OSR Apparatus; and pricing and marketing information. A "trade secret" under the ITSA means:

> information, including but not limited to, technical or non-technical data, a formula, pattern, compilation, program, device, method, technique . . . process, financial data, or list of actual or potential customers. . . that:
>
> (1) is sufficiently secret to derive economic value, actual or potential, from not being generally known to other persons who can obtain economic value from its disclosure or use; and
>
> (2) is subject to efforts that are reasonable under the circumstances to maintain its secrecy or confidentiality.

ITSA §2(d).

Where the information is not "readily ascertainable" from a public source but, rather, is developed over time through an employer's extensive business endeavors, the information is "secret." *Stampede Tool Warehouse, Inc. v. May*, 272 Ill. App. 3d 580, 588-589, 651 N.E.2d 209, 215-216 (1st Dist. 1995). Information that meets the ITSA "secrecy" criterion includes customer lists that are not readily ascertainable (*see Stampede Tool, supra*); pricing, distribution and marketing plans (*see PepsiCo, Inc. v. Redmond*, 54 F.3d 1262, 1269-70 (7th Cir. 1995) (applying ITSA)); and proprietary methodologies, systems, procedures and protocols (*see e.g., Tie Systems, Inc., Illinois v. Telecom Midwest, Inc.*, 203 Ill. App. 3d 142, 148 (1st Dist. 1990); *RKI, Inc. v. Grimes*, 177 F.Supp.2d 859 (N.D.Ill. 2001) (construing Illinois law). Absent misappropriation, the OSR Apparatus, Processes, pricing information and customer contact information are not readily ascertainable from any public source and are kept sufficiently secret to derive economic value for their not being known to OSR's competitors. Kohutro Declaration,

¶17-21. OSR's Trade Secrets derive significant economic value through sales of distributorships founded on those secrets.

OSR's competitors have not developed such advanced methods and/or devices to complete the services performed with the OSR Apparatus and OSR's Processes because of the investment required, and continue to use more cumbersome and messier methods such as draining the pond or waterway or using a barge to remove the sediment and "muck" that can be found on the bottom of ponds and other waterways. *Id.* Indeed, but for his misappropriation of OSR's Trade Secrets and other confidential information, it would have taken Pirl years of research and development to develop a device similar to the OSR Apparatus and to replicate the Processes; and cost him a considerable amount of time and money. *Id.* at ¶ 23-24.

OSR has not made its device and Processes available to the public in any way and requires all persons granted knowledge of or exposure to OSR's Trade Secrets to execute confidentiality agreements covenanting to not only keep such information secret but to "not use the Confidential Information or any part thereof as a basis for the creation of any method, systems, business or product similar to [OSR's] products embodied in the Confidential Information unless expressly authorized in writing by [OSR]." *Id.* at ¶17-21.

OSR's pricing and competitive bidding information is likewise not readily ascertainable from any public source and is integral to OSR's unique business program and proprietary methodologies, systems, procedures and protocols not available to OSR's competitors. *Id.* The formula underlying OSR's pricing cannot therefore be completely derived from any information known to either OSR's competitors or customers. *Id.* This sort of pricing information, from which OSR derives economic value and a competitive advantage, falls squarely within the sort of

information Illinois courts have held to constitute a trade secret. *See PepsiCo*, 54 F.3d at 1269-70 (holding pricing information sufficiently secret to constitute trade secrets).

Further, in addition to protecting such information with confidentiality agreements, OSR disseminates its confidential pricing information on a need-to-know basis and does not make such information available to everyone who works for OSR. Kohutko Declaration, at ¶ 8**.** Such efforts have been held to be sufficient to support a claim for trade secret misappropriation. *See Service Centers of Chicago, Inc. v. Minogue*, 180 Ill. App. 3d 447, 453-54 (1st Dist. 1989)(trade secret protection is maintained when the information is limited to those persons have a need to know); *Elmer Miller, Inc. v. Landis*, 253 Ill. App. 3d 129, 134 (1st Dist. 1993); *see also, Stampede Tool Warehouse, Inc. v. May*, 272 Ill. App. 3d 580, 589 (1st Dist. 1995); *Mangren Research & Development Corp. v. National Chemical Co.*, 87 F.3d 937, 942 (7th Cir. 1996) and *Strata Marketing, Inc. v. Murphy*, 317 Ill. App. 3d 1054, 1058 (1st Dist. 2000).

Finally, OSR's customer information is likewise not readily ascertainable from any public source. Kohutko Declaration, ¶ 21. OSR seeks to protect with its request of an injunction the compilation of customer prospects and contacts it has developed over years. *Id*. OSR identified such prospects with the expenditure of a significant amount of time, effort and money and to gather a comparable list of real prospects, OSR's competitors would have to do the same. *Id*.

Under the above circumstances, OSR's customer information is sufficiently secret to constitute a trade secret. *See In Stampede Tool*, 272 Ill. App. 3d 580 (1st Dist. 1995) (rejecting defendant's argument that customer list was public where there was no public source for the compilation of information); *Gillis Associated Industries, Inc. v. Cari-All, Inc*., 206 Ill. App. 3d 184 (1st. Dist. 1991) (holding that list of 3000 customers who had purchased goods from plaintiff constituted a trade secret even though information in list could all be obtained from public sources,

since no one source listed all customers which had purchased goods from plaintiff and since the information could not be duplicated without considerable time, effort and expense). Moreover, because OSR employs the same measures to protect its customer information as it does to protect its pricing information, such information is likewise subject to reasonable measures to maintain its secrecy.

**2. Defendants Have Unlawfully Misappropriated OSR's Trade Secrets**

The ITSA provides that "actual or threatened misappropriation" of a trade secret may be enjoined. ITSA §3(a). "Misappropriation" means, in pertinent part:

> (1) acquisition of a trade secret of a person by another person who knows or has reason to know that the trade secret was acquired by improper means; or
>
> (2) disclosure or use of a trade secret of a person without express or implied consent by another person who:
>
> (A) used the improper means to acquire knowledge of the trade secret; or
>
> (B) at the time of disclosure or use, knew or had reason to know that the person's knowledge of the trade secret was:
>
> (I) derived from or through a person who had utilized improper means to acquire it;
>
> (II) acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use; or
>
> (III) derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use.

ITSA § 2(b). "Improper means" of acquiring a trade secret includes "theft, . . . breach of a confidential relationship or other duty to maintain secrecy or limit use, or espionage through electronic or other means." ITSA §2(a).

The evidence currently available to OSR of Pirl' and US' alleged misappropriation of its OSR Apparatus, Processes, pricing information and customer contract information is substantial. See Declarations submitted by Kohutko, Shafer and Abramson. US has developed a device substantially similar to the OSR Apparatus as well as procedures similar or identical to the Processes to perform the same services in its business as OSR and did not develop such device or engage in such business until after Pirl started to work for OSR. *See, e.g., Roton Barrier, Inc. v. The Stanley Works*, 79 F.3d 1112 (Fed. Cir. 1996) (construing Illinois law) (finding defendant's inability to practice the relevant art before viewing plaintiff's trade secrets to be indicative of misappropriation). Prior to his employment with OSR, Pirl had no experience in the business. Upon information and belief, Pirl has been using his knowledge of OSR's potential leads and customers as well as OSR's pricing information to solicit those potential leads and customers and to undercut OSR's bidding for jobs. Moreover, even **before** Pirl terminated his employment with OSR, US was up and running. Either before or shortly thereafter his termination, US was aggressively bidding on customers OSR had previously identified as active prospects. Such facts point to only one conclusion, Pirl and US have acquired OSR's Trade Secrets and other confidential information and did so by improper means. *See, e.g., RKI*, 177 F.Supp.2d at 876: "Because direct evidence of theft and use of trade secrets is often not available, the plaintiff can rely on circumstantial evidence to prove misappropriation by drawing inferences from perhaps ambiguous circumstantial evidence."

Because OSR does not provide divers access to its pricing and customer contact information, Pirl, who was a diver at OSR, could not have obtained such information except by improper means or from a person who had an obligation to keep such information secret from him. Likewise, Pirl himself does not have the knowledge, skill or expertise to have reverse

engineered or otherwise replicated the OSR Apparatus on his own and would have had to have either memorized or photographed proprietary characteristics of the OSR Apparatus for use by a third party. Thus, the relevant information used by Pirl and US to compete against OSR was acquired by improper means and, as a result, both Pirl and US are subject to a claim for trade secret misappropriation such trade secrets relating to the OSR Apparatus. *See Stampede Tool*, 651 N.E.2d at 217 ("a trade secret can be misappropriated by physical copying or by memorization") and *Mangren Research and Development Corp. v. National Chemical Co.*, 87 F.3d 937, 944-45 (7th Cir. 1996) (once former employee of plaintiff apprised his new employer of plaintiff's trade secrets and his new employer made use of such trade secrets, his new employer was likewise liable for misappropriation under the ITSA).

Additionally, Pirl and US will inevitably continue to unlawfully use and misappropriate OSR's trade secret information because US' entire business derives from such improperly obtained information. This inevitable use of OSR's trade secret information will allow Pirl and US to gain a substantial unfair competitive advantage over OSR and must also be enjoined. *See PepsiCo*, 1996 WL 3965 at *17-20. Therefore, OSR has rights under the ITSA that are entitled to protection, and Pirl and US have violated and will inevitably continue to violate those rights.

**B. OSR Also Has Protectible Interests Pursuant To Its Confidentiality Agreement**

Pirl's disclosure and use of OSR's trade secrets also constitutes a breach of his Confidentiality Agreement with OSR. OSR is entitled to emergency injunctive relief barring Pirl from engaging in such conduct. *See PepsiCo, Inc.*, *supra*, 54 F.3d at 1271-72 (injunction warranted for breach of non-disclosure agreement signed by former employee).

Pirl's Confidentiality Agreement prohibits him from reproducing, divulging, publishing, communicating, using or utilizing without OSR's express written consent information defined

therein as "Business Trade Secrets" or "Confidential Information." Kohutko Declaration, ¶ 9. The Confidentiality Agreement also required that Pirl return all Confidential Information (including Business Trade Secrets) within fifteen days of OSR's demand for the return of any such information in his possession. *Id.* Additionally, Pirl expressly agreed in his Confidentiality Agreement to "not use the Confidential Information or any part thereof as a basis for the creation of any method, systems, business or product similar to [OSR's] products embodied in the Confidential Information unless expressly authorized in writing by [OSR]." *Id.*

Pirl's conduct discussed above in misappropriating the OSR Apparatus and OSR's pricing and customer contact information constitutes a breach of Pirl's above covenants. *See* Kohutko Declaration, ¶15; Shaffer Declaration, ¶9; Abramson Declaration, ¶¶3-5. Further, Pirl's conduct in breach of the covenants of his Confidentiality Agreement has been both willful and blatant. He has further refused to return OSR's trade secrets despite at least two written demands from OSR. *Id.* Pirl has proven to have no regard for his contractual duties to OSR and an injunction is necessary to force his compliance. Likewise, an injunction against US is necessary to prevent Pirl from circumventing the obligations of his Confidentiality Agreement through US and to enjoin US from tortiously interfering with that agreement.

### C. Alternatively, OSR Has Protectible Interests In Enjoining Pirl From Continuing To Breach His Duty Of Loyalty And Usurping OSR's Corporate Opportunities

Pirl, while working for OSR, learned OSR's ways of doing business just long enough to take what he learned and start a business directly competing with OSR. Regardless of whether this information constitutes "trade secrets," Pirl and US should be enjoined from using the fruits Pirl's breach of his duty of loyalty and other legal duties to OSR. In *RKI, Inc. v. Grimes*, 177 F. Supp. 2d 859, 880-81 (N.D.Ill. 2001), the Court not only entered a judgment in favor of an employer against its former employee and that employee's new employer under the ITSA but

also pursuant to the plaintiff employer's "alternative" claims for conversion, breach of duty of loyalty, breach of contract and tortious interference with contract. *See also, Hecny Transport., Inc. v. Chu*, 430 F.3d 402, 404- 405 (7th Cir. 2005) ("because it is unimaginable that someone who steals property, business opportunities, and the labor of the firm's staff would get a free pass because none of what he filched is a trade secret."). *See also, Cardionet, Inc. v. Lifewatch Corp.*, 2008 WL 567223 (N.D. Ill. 2008) (construing Illinois law).

**D. The Result Is The Same Pursuant To The WTSA**

There do not appear to be differences between the ITSA and the WTSA that are significant to this Motion, and therefore, OSR respectfully submits that it should be awarded the requested preliminary injunction if this Court applies Illinois or Wisconsin law. For example, under the law of either state, "misappropriation" can occur through the defendants' purported modification or improvement of an alleged trade secret. *See, e.g., Mangren*, 87 F. 3d at 944 (citing *In re: Innovative Constr. Sys. Inc.,* 793 F.2d 875, 887 (7th Cir. 1986) (construing Wisconsin law) and *In re Innovative Constr. Sys. Inc.*, 793 F.2d 875, 887 (7th Cir. 1986) (construing Wisconsin law, citing *Mangren* and finding that " . . . if trade secret law were not flexible enough to encompass modified or even new products that are substantially derived from the trade secrets of another, the protections that the law provides would be hollow indeed").

**IV. OSR WILL SUFFER IMMEDIATE AND IRREPARABLE INJURY FOR WHICH IT HAS NO ADEQUATE REMEDY AT LAW.**

Pirl is actively using OSR's trade secrets to compete against OSR. The ITSA recognizes that irreparable injury will result from the misappropriation of trade secrets by specifically providing for the availability of injunctive relief as well as affirmative injunctive relief requiring the return of trade secret information. ITSA § 3(a) and (c). The courts have recognized that the real injury which results from the misappropriation of secrets is the loss of the competitive

advantage carved out by the owner of those secrets through the expenditure of effort, time and money to develop them and that injunctive relief is appropriate to redress such injury. Stampede Tool, 272 Ill. App. 3d at 588-590; Elmer Miller, 253 Ill. App. 3d at 133-34.

## V. OSR HAS DEMONSTRATED A LIKELIHOOD OF SUCCESS ON THE MERITS.

As the court noted in *PepsiCo*, 1996 WL 3965 at *31:

> "[T]he degree of likelihood of prevailing on the merits that the plaintiff must demonstrate decreases the more heavily the balance of harms weighs in its favor." (citation omitted) Consequently, "[I]f the harm to the plaintiff from the denial of the preliminary injunction would be very great and the harm to the defendant from granting it very small, then the injunction should be granted even if the defendant has a better chance of prevailing on the merits than the plaintiff, provided the plaintiff's chances are better than negligible . . .." *Omega Satellite Prods. v. Indianapolis*, 694 F. 2d 119, 123 (7th Cir. 1982).

As set forth above, OSR has raised a substantial likelihood of prevailing on the merits.

## VI. BALANCE OF HARMS AND THE PUBLIC INTEREST

OSR's loss of its competitive advantage resulting from the misappropriation of its Trade Secrets is irreparable. *Elmer Miller*, *supra*; *PepsiCo*, *supra*. By contrast, the preliminary injunction that OSR seeks will only restore the *status quo* so that Pirl and US will not unfairly profit from the use of OSR's Trade Secrets until the Court can rule on the matter. As the District Court in *PepsiCo*, 1996 WL 3965 at *30 concluded, where, as here, the choice is between requiring the defendants to compete fairly by not using misappropriated trade secrets and requiring the victim of such misappropriation to suffer irreparable harm, a preliminary injunction should issue.

## VII. CONCLUSION

For the foregoing reasons, OSR's Motion for a Preliminary Injunction should be granted.

Dated: July 28, 2008

Respectfully submitted,

PLAINTIFF ORGANIC SEDIMENT REMOVAL SYSTEMS, INC.,

By: */s/ Lisa D. Johnson*
One of its Attorneys

Robert H. Lang (6225414)
Lisa D. Johnson (6280293)
HOLLAND & KNIGHT LLP
131 S. Dearborn, St., 30th Flr.
Chicago, Illinois 60603
Tel: (312) 263-3600
Fax: (312) 578-6666

## CERTIFICATE OF SERVICE

The undersigned certifies that on July 28, 2008, a copy of the foregoing **Memorandum In Support of Motion for Preliminary Injunction** was served by Electronic Mail upon all counsel of record.

__*/s/ Lisa D. Johnson*_______

# 5476058_v1